433 So.2d 969 (1983)
FLORIDA BOARD OF BAR EXAMINERS In re Kevin Charles HALE.
No. 62135.
Supreme Court of Florida.
June 2, 1983.
Donald E. Van Koughnet, Naples, for petitioner.
C. Graham Carothers, Tallahassee, for respondent.
EHRLICH, Justice.
This cause is before the Court on petitioner Kevin Charles Hale's Motion for Rehearing. We have jurisdiction of this bar admissions case pursuant to article V, section 15, Florida Constitution. For the reasons expressed herein, we deny the motion.
Petitioner requested this Court waive Florida Supreme Court Bar Admissions Rule, article III, section 1(b).[1] That rule *970 requires an applicant to the Florida Bar Examination to have graduated with an LL.B or J.D. degree from a law school either approved by the American Bar Association (ABA) or which is a member of the Association of American Law Schools (AALS). Petitioner is a graduate of Dalhousie University Law School, Halifax, Nova Scotia, Canada.
Petitioner filed a prior petition with this Court in Case No. 60,272 for waiver of both sections 1(a) and 1(b) of the Bar Admissions Rule since his undergraduate degree was from Acadia University, Nova Scotia, Canada. Section 1(a) of the Rule[2] requires an applicant to the Florida Bar Examination to have graduated with a bachelor's degree from an accredited university. In the alternative, an applicant can complete a College Level Equivalency Program ("CLEP") or can have his educational credentials evaluated as being equivalent to a bachelor's degree awarded by an accredited institution. This Court denied that petition.[3]
Petitioner then successfully completed a CLEP examination, which was subsequently approved by the Florida Board of Bar Examiners as fulfilling the section 1(a) requirement. Petitioner thereupon filed a petition for waiver of section 1(b) only. This Court denied that petition.[4] Petitioner then filed the instant motion for rehearing.
Petitioner argues that he is in the same position as the petitioner in In re Hass.[5] He states that Hass, a University of London law graduate, had petitioned this Court for waiver of both sections 1(a) and 1(b), which petition was denied; that Hass successfully completed the CLEP alternative for compliance with section 1(a); that Hass then petitioned the Court for waiver of only section 1(b); that the Court denied that petition; but that upon a motion for rehearing, this *971 Court approved Hass's petition. Petitioner argues that he can divine only two alternative reasons for this Court's denial of his petition to waive section 1(b). He believes that either this Court has concluded that his Canadian law degree is not of the quality of Hass's University of London degree or Moore's Cambridge University degree,[6] or that this Court has adopted a policy of no longer granting section 1(b) waivers. Petitioner then stated he was loath to believe that this Court had adopted an across-the-board policy of granting no waivers under section 1(b) of the Rule. However, this Court now, in fact, adopts a policy of no waiver under section 1(b).
In 1955, this Court initiated the requirement that all applicants submitting to the Florida Bar Examination be graduates of ABA-approved law schools or AALS law schools. We did this, in part, "in an effort to provide uniform and measurable standards by which to assess the qualifications of applicants." LaBossiere v. Florida Board of Bar Examiners, 279 So.2d 288, 289 (Fla. 1973). In addition, we very aptly noted that "we were unequipped to make such a determination ourselves because of financial limitations and the press of judicial business." Id.
Over the years, this Court has waived the educational qualifications requirement in only a few instances. Our records indicate that since January 1976, there have been fifty-five petitions from individuals who attended either unaccredited American universities or foreign universities and who desired a waiver of section 1(a) or 1(b) or both. We granted only nine. These nine included a granting on rehearing for a Lewis University College of Law graduate whose school received ABA accreditation on the date of this Court's first decision denying the petition;[7] a University of Baltimore graduate who graduated while that school was still unaccredited but who was barred from complying with the work-product alternative because his employment had been with the Internal Revenue Service and that agency's files were confidential;[8] a sitting Florida county court judge who wished to submit a work product in lieu of the law school requirement;[9] two Cambridge University graduates;[10] a graduate of the University of London;[11] a University of Windsor[12] and a McGill University graduate;[13] and a graduate of Agra University in India.[14]
In each of these exceptional situations, this Court deliberatively decided that the exigencies of these particular cases merited waiver of the appropriate rule. Disappointed petitioners, however, have questioned our discretion in granting the above waivers while not granting their petitions. We have hesitantly come to the conclusion that a seeming ad-hoc approach in the granting of waivers bears within it the appearance of discrimination and this we do not and did not intend.
Three courses of action present themselves to this Court at this juncture. First, we could continue to evaluate non-accredited education on a case-by-case basis in order to determine substantial equivalence to a J.D. degree from an accredited law school. This approach is extremely difficult and would require an inordinate amount of *972 money as well as our judicial time. For example, it appears to us that the Canadian legal education system, from a practical standpoint, is quite similar to ours vis-a-vis undergraduate education, the tradition of the common law, the textbooks used and the quality of the faculty. Parenthetically then, while a British legal education from Oxford or Cambridge may justifiably be viewed as excellent, it may not be as substantially equivalent to an approved legal education as one from Windsor or McGill. The difficulties in evaluating these various parameters are readily apparent.
A second course of action could be to accept a graduate degree in law from an ABA-approved law school in lieu of the accredited first degree in law. This likewise is unsatisfactory. A Master's degree (LL.M.) usually involves only a one-year program of combined course work and research; a Doctorate of Juridical Sciences (S.J.D.) is a graduate academic research degree revolving around advanced publishable work; and a Master's in Comparative Law (M.C.L.) is primarily for foreign-educated lawyers. None of the three degrees, in our opinion, is based upon the core of courses we deem as minimally necessary to be a properly-trained attorney.
A third course of action, and the one that this Court is reaffirming at this time, is to hold to the present standard requiring a J.D. or LL.B. degree from an ABA-approved law school or AALS law school. We thus reassert the continued validity of section 1(b) of the Rule.
This Court will no longer favorably consider petitions for waiver of section 1(b) of the Rule. We voice our opinion that the rule, while conceivably a hardship to some, is in the best interest of the legal profession in our state.
Some may argue that by this Court's adherence to the requirement of ABA or AALS law school approval, we are abdicating our supervisory responsibility over bar admissions and unlawfully delegating our constitutional function to a private authority. This is simply not true. As stated by the Supreme Court of Minnesota when it faced the same argument:
It is ... rational for a state supreme court to conclude that the ABA is best equipped to perform the function of accrediting law schools.
... .
We have not delegated our authority to the ABA but, instead, have simply made a rational decision to follow the standards of educational excellence it has developed.
In re Hansen, 275 N.W.2d 790, 794, 796 (Minn. 1978), appeal dismissed, 441 U.S. 938, 99 S.Ct. 2154, 60 L.Ed.2d 1040 (1979). The underpinning of this decision, as already noted in our LaBossiere decision, is that "[w]e have neither the time nor the expertise to investigate individually the special training of an applicant or the program offered by specific law schools, and any attempt by us to do so would be inefficient and chaotic." 275 N.W.2d at 796. "The ABA system of accreditation is sophisticated and time-consuming. We can think of no effective substitute which could be developed at the state level without diverting impractical amounts of manpower and money into such an inquiry." In re Urie, 617 P.2d 505, 508 (Alaska 1980) (footnote omitted). See also In re Busch, 313 N.W.2d 419 (Minn. 1981).
Our holding as to our reaffirmance of section 1(b) has a differential impact upon graduates of unaccredited American law schools as distinct from graduates of foreign law schools. This follows from Standard 308 of the ABA's standards for approval of law schools and its interpretations.[15] That standard[16] allows credit for *973 studies at a law school outside the United States if certain criteria are met. A foreign lawyer may receive credit for his foreign legal education when later pursuing a J.D. or LL.B. degree at an approved law school. A graduate of a common law education system is permitted up to two years credit; in most instances, though, approved law schools give only up to a year credit since these schools have a rule requiring completion of two-thirds of the course work in residence at that school. Interpretation 1 of Standard 308[17] states that credit is not allowed for studies at a law school in the United States that is not on the ABA-approved list. Thus, a graduate of an unaccredited American law school would not be able to enroll in an accredited law school and receive credit for his work at the unaccredited school; a foreign law school graduate, on the other hand, would.
We make but one modification in our strict interpretation of our bar admissions rules, and this concerns section 1(a), the accredited undergraduate university rule. We hold that rule to have our full support and we emphasize that we will grant no waivers to that rule. As noted by a federal court when it upheld a similar rule in New Jersey, "[W]e cannot say that there is a clear lack of connection between the Rule and the plaintiff's fitness or capacity to practice law." Ostroff v. New Jersey Supreme Court, 415 F. Supp. 326, 329 (D.N.J. 1976).
Our modification of section 1(a) relates solely to foreign law school graduates. If a foreign law school graduate is admitted to and graduates from an ABA-accredited or AALS law school with a J.D. or LL.B. degree, we will not look behind the applicant's undergraduate degree to see if it conforms to the requirements of section 1(a). We will automatically waive section 1(a) in this limited instance.
To recapitulate, this Court reaffirms section 1(b) and will no longer grant waivers of that rule's requirements. Additionally, we reaffirm section 1(a) except in the case of a foreign law school graduate who later graduates from an accredited law school with a J.D. or LL.B. degree, in which case we waive section 1(a).
In the instant case, since the petitioner has not met the requirements of section 1(b) in that he has not graduated from an accredited law school, nor has he met the requirements of section 1(c)'s alternative route,[18] we deny his motion for rehearing.
It is so ordered.
*974 ALDERMAN, C.J., and BOYD, OVERTON and SHAW, JJ., concur.
ADKINS and McDONALD, JJ., dissent.
NOTES
[1] Section 1. No applicant shall be admitted to the Florida Bar Examination unless he or she furnishes to the Board:

....
(b) Satisfactory evidence of graduation from a full-time accredited law school at a time when or within 12 months of such accreditation, or in the alternative, satisfactory evidence that the applicant has completed the requirements for graduation from a full-time accredited law school at a time when such law school was accredited or within 12 months of such accreditation, and that such accredited law school has or, in the alternative, will confer upon the applicant the degree of Bachelor of Laws or Doctor of Jurisprudence. The term "accredited law school" has reference to any law school approved or provisionally approved by the American Bar Association or which is a member of the Association of American Law Schools. None of the following shall be substituted for law school training:
(1) Private study, correspondence school or law office training;
(2) Age or experience;
(3) Waived or lowered standards of legal training for particular persons or groups.
[2] Section 1. No applicant shall be admitted to the Florida Bar Examination unless he or she furnishes to the Board:

(a) Satisfactory evidence that (1) the applicant has received an academic Bachelor's Degree granted on a basis of a four-year period of study in a college or university on the approved list of any one of the following regional accrediting associations or any Florida college or university approved by the Supreme Court of Florida:
a. New England Association of Schools and Colleges;
b. Middle States Association of Colleges and Schools/Commission on Higher Education;
c. North Central Association of Colleges and Schools;
d. Southern Association of Colleges and Schools  Commission on Colleges;
e. Northwest Association of Schools and Colleges;
f. Western Association of Schools and Colleges  Accrediting Commission for Senior Colleges.
The academic Bachelor's degree referred to above must have been conferred at a time when such college or university was accredited or within 12 months of such accreditation. (2) In the alternative, such applicant shall have successfully completed an examination designated by the Board evidencing attained knowledge equivalent to 120 semester hours of college study to be administered under the Board's supervision; or (3) a determination at the cost of the applicant by a credentials evaluation service or other professionals approved by the Board that the applicant's education is the equivalent of a Bachelor's Degree awarded by an accredited institution.
This section shall be applicable only to those applicants applying for admission to the Bar who enrolled in any accredited law college subsequent to December 31, 1975. All other applicants shall be governed by previous requirements under Section 22(a) of Article IV. (Satisfactory evidence of at least two years' in-residence undergraduate work if entry into law school was prior to December 31, 1960, or at least three years' in-residence undergraduate work if entry into law school was subsequent to December 31, 1960, but prior to December 31, 1975, or the successful completion of a college equivalency examination to be administered under the Board's supervision.)
Graduation from any one of the following institutions: the United States Military Academy, the United States Naval Academy, the United States Air Force Academy, the United States Coast Guard Academy, or the United States Merchant Marine Academy, will fully satisfy the requirement of this section.
[3] Fla. Bd. of Bar Examiners. In re Hale, No. 60,272 (Fla. Mar. 25, 1981).
[4] Fla. Bd. of Bar Examiners. In re Hale, No. 62,135 (Fla. July 26, 1982).
[5] Fla. Bd. of Bar Examiners. In re Hass (Perlman), No. 55,598 (Fla. Feb. 22, 1979) (on rehearing).
[6] In re Moore. Petition for Admission to Fla. Bar Examination, No. 41,219 (Fla. May 22, 1972).
[7] Fla. Bd. of Bar Examiners. In re Glickman, No. 53,235 (Fla. Feb. 17, 1978) (on rehearing).
[8] Fla. Bd. of Bar Examiners. In re Caplan, No. 58,463 (Fla. Feb. 18, 1980).
[9] Fla. Bd. of Bar Examiners. In re Milton, No. 58,400 (Fla. Dec. 17, 1981).
[10] Fla. Bd. of Bar Examiners. In re Rundle, No. 53,259 (Fla. June 13, 1978) (on reconsideration); Fla. Bd. of Bar Examiners. In re Fernandez, No. 50,456 (Fla. Nov. 10, 1976).
[11] See infra note 5.
[12] Fla. Bd. of Bar Examiners. In re Finkelman, No. 55,633 (Fla. May 3, 1979) (on rehearing).
[13] Fla. Bd. of Bar Examiners. In re Manella, No. 55,848 (Fla. July 18, 1979).
[14] Fla. Bd. of Bar Examiners. In re Dua, No. 52,888 (Fla. Feb. 13, 1978).
[15] Standards & Rules of Procedure for the Approval of Law Schools and Interpretations (1981).
[16] The law school may admit with advanced standing and allow credit for studies at a law school outside the United States if the studies

(i) either were "in residence" as provided in Section 305, or qualify for credit under Section 306, and
(ii) the content of the studies was such that credit therefor would have been allowed towards satisfaction of degree requirements at the admitting school, and
(iii) the admitting school is satisfied that the quality of the educational program at the prior school was at least equal to that required for an approved school.
Advanced standing and credit allowed for foreign study shall not exceed one-third of the total required by the Standards for the first professional degree unless the foreign study related chiefly to a system of law basically followed in the jurisdiction in which the admitting school is located; and in no event shall the maximum advanced standing and credit allowed exceed two-thirds of the total required by the Standards for the first professional degree.
[17] Interpretation 1 of 308: Section 308 states the only circumstances under which an approved school may admit with advanced standing and allow credit for studies at a law school that is not on the list of law schools approved by the American Bar Association. Credit may not be allowed for studies at a law school in the United States that is not on the list of law schools approved by the American Bar Association. Credit may be allowed for studies at a law school in the United States that is on the list of law schools approved by the American Bar Association in the discretion of the admitting school. Credit may be allowed for studies at a law school outside the United States only to the extent authorized by Section 308. February, 1977.

See also Interpretation 2 of 308: A candidate school for provisional approval may accept student transfer credit from an approved law school, but may not accept student transfer credit from unapproved law schools. December, 1977.
[18] (c) For those applicants not meeting the requirements of Article III, Section 1(a) or (b), the following requirements shall be met: (1) such evidence as the Board may require that such applicant was engaged in the practice of law in the District of Columbia or in other states of the United States of America, or in practice in federal courts in territories, possessions or protectorates of the United States for at least ten years, and was in good standing at the bar of the District of Columbia, the territory, possession or protectorate, or of the state in which such applicant practiced; and (2) a representative compilation of the work product in the field of law showing the scope and character of the applicant's previous experience and practice at the bar, including samples of the quality of the applicant's work, such as pleadings, briefs, legal memoranda, corporate charters or other working papers which the applicant considers illustrative of such applicant's expertise and academic and legal training. Such representative compilation of the work product shall confine itself to the applicant's most recent ten years of practice and shall be filed at least 90 days prior to the administration of the Florida Bar Examination, notwithstanding the provisions of Article VI, Section 5. If a thorough consideration of such representative compilation of the work product shows that the applicant is a lawyer of high character and ability, whose professional conduct has been above reproach, and whose academic and legal scholarship conform to approved standards and sum up to the equivalent of that required of other applicants for admission to the Florida Bar Examination, the Board may, in its discretion, admit such applicant to the General Bar Examination and accept score reports directed to the Board from the National Conference of Bar Examiners or its designee. In evaluating academic and legal scholarship the Board is clothed with broad discretion.