PER CURIAM.
By petition and supplement to petition, the Florida Board of Bar Examiners has requested certain amendments to the Rules of the Supreme Court Relating to Admissions to the Bar. The proposed amendments were published in The Florida Bar News on January 15, 1989.
The board proposes that article I, sections 2 and 3, be amended for housekeeping purposes consisting of the deletion of obsolete language and the use of a more fitting designation for the nonlawyer members of the board.
The board proposes that article III, section 1, be amended to conform the rules to the Court’s practice of not approving undergraduate programs at nonaccredited col *236 leges and universities in Florida. The board further proposes that this section be amended to include the modification made by this Court in Florida Board of Bar Examiners in re Hale, 433 So.2d 969 (Fla.1983), pertaining to foreign law school graduates.
The board also seeks to amend article IV to authorize applicants to petition the board for reconsideration of administrative rulings and to extend the prescribed time periods pertaining to a petition filed by an applicant with this Court for review of a board action.
The board also proposes to amend article IV, section 6, to include a provision advising applicants that the background investigation will commence only upon receipt of a fully completed and properly executed bar application, certain specified documents, and the appropriate fee.
The board also seeks to amend article V, section 18, to provide a uniform fee for the photocopying of an applicant’s bar application.
In addition, the board proposes that article V, section 4, and article VI, section 5, be amended to set earlier dates for the timely and late filing deadlines for applicants seeking admission to an administration of the general bar examination (GBE). The readjustment of fees for late filings is recommended to encourage timely applications and to cover the additional administrative costs involved in the staff handling of an untimely application.
No objection has been filed with respect to any of the foregoing proposals. Because each of them appears appropriate and consistent with the philosophy of this Court concerning bar admissions, they are approved.
The board also seeks to amend article VI, section 1, to allow applicants to submit to the multistate professional responsibility examination (MPRE) prior to graduation from law school but within twenty-five months of successful completion of the other parts of the Florida Bar Examination. The proposed amendment would eliminate the current restriction against taking the MPRE until after graduation from law school. Through the use of additional graders and computerization of the grade release process, the board believes that in the future it will be able to release the results of the GBE in five weeks from the date of administration. However, because the MPRE results will not become available until sometime thereafter, there will be approximately a two-week delay in the admission of qualified applicants. The board’s rationale is that the MPRE could be taken during law school so that those persons who successfully pass both examinations could be admitted as soon as possible. Permitting the applicants to take the MPRE during law school would also give them more flexibility in selecting a convenient site for the examination.
The board reasons that the MPRE measures examinees’ knowledge of established ethical standards governing the legal profession rather than testing their technical competence. Because the MPRE is an awareness test which covers the narrow subject of American Bar Association ethical standards, the board believes that taking the exam during law school would have little or no adverse impact upon students’ studies. The board advises that in a recent survey of those jurisdictions using the MPRE, twenty-nine of them permit the MPRE to be taken during law school, while only three jurisdictions require the examination to be taken after graduation.
The deans of the several law schools in Florida have filed a response which opposes this amendment. The deans express the concern that their law students would devote less time than usual to their law school course work throughout the weeks preceding the MPRE. Despite the board’s perception of the MPRE as an awareness test, the deans believe that the students will spend a disproportionate amount of time in preparation for the first hurdle to be overcome in their progress toward admission to the Bar.
The deans also explain that because of the scheduling of the MPRE, the students will almost certainly miss some law school classes in order to take the examination. In emphasizing the importance of class at *237 tendance, they point to strict law school accreditation standards of the American Bar Association on this subject.
Upon consideration, the Court concludes that the benefits to be obtained by permitting the MPRE to be taken while the student is still in law school do not outweigh the possibility that the students’ law studies may be adversely affected. This Court declines to approve this recommendation.
Those amendments to the rules which are approved are set forth in Exhibit “A” attached to this opinion and shall become effective immediately.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
EXHIBIT A
Article I, Section 2 as it currently appears:
Section 2. There is hereby created a Florida Board of Bar Examiners consisting of twelve members of The Florida Bar and three lay members of the general public. The members now constituting said Board shall continue to hold office for the terms now appointed, and their successors shall continue to be selected and appointed in the manner prescribed in Article 1 of the Rules Relating to Admissions to The Florida Bar.
a. Attorney Members of the Board. As the terms of the attorney members expire, all appointments shall be for no more than five years, and any vacancy occurring during any term shall be filled by appointment. No attorney appointed by the Court as a result of a vacancy occurring during a term shall be appointed for more than five years, and the term of all such appointments shall be extended to October 31 of the last year of such term.
b. Lay Members of the Board. All appointments of lay members shall be for no more than three years, and any vacancy occurring during any term shall be filled by appointment. Initially, the first lay member shall be appointed effective November 1, 1981, the second lay member shall be appointed effective November 1, 1982, and the third lay member shall be appointed effective November 1, 1983. No lay member appointed by the Court as a result of a vacancy occurring during a term shall be appointed for more than three years, and the term of all such appointments shall be extended to October 31 of the last year of such term.
Article I, Section 2 as it would appear:
Section 2. There is hereby created a Florida Board of Bar Examiners consisting of twelve members of The Florida Bar and three lay nonlawyer members of the general public. T-he-members-now--oonstituting said-Boar-d-shall-continue-to-hold-office-for the-ter-ms-now-appointedrand-their-succes-sors shall continue to be seleeted-and-ap-pointed-m-the-manher-prescribed-in- Article I-of-tfae -Rules -Relating-to-Admissions- to The Florida Bar,
a. Attorney Members of the Board. As the terms of the attorney members expire, all appointments shall be for no more than five years, and any vacancy occurring during any term shall be filled by appointment. No attorney appointed by the Court as a result of a vacancy occurring during a term shall be appointed for more than five years, and the term of all such appointments shall be extended to October 31 of the last year of such term.
b; Lay Public Members of the Board. All appointments of lay public members shall be for no more than three years, and any vacancy occurring during any term shall be filled by appointment. Initially^ the first lay member — shall be appointed effective November 1, 1981, the second lay member- shall be appointed effective November 1, 1982, and the third lay member shall be appointed effective November 1, 1983, No lay public member appointed by the Court as a result of a vacancy occurring during a term shall be appointed for more than three years, and the term of all *238 such appointments shall be extended to October 31 of the last year of such term.
Article I, Section 3 as it now appears:
Section 3. The Board of Governors of The Florida Bar shall submit to the Court not less than thirty days prior to the expiration of the term of any attorney member of the Board, and in case of a vacancy, within thirty days thereafter, its recommendations with respect to appointees. Such group of recommended appointees shall be thrice the number to be appointed.
A joint committee composed of three members of the Board and three members of the Board of Governors of The Florida Bar shall submit to the Court not less than thirty days prior to the expiration of the term of any lay member of the Board, and in the case of a vacancy, within thirty days thereafter, its recommendations with respect to appointees. Such group of recommended appointees shall be thrice the number to be appointed.
The following provisions will be pertinent in connection with the nominations to membership on the Board:
a. Qualifications. Attorney members shall be practicing attorneys with scholarly attainments and an affirmative interest in legal education and requirements for admission to the Bar. Lay members shall have an academic Bachelor’s Degree. It is desirable that lay members possess educational or work-related experience of value to the Board such as educational testing, accounting, statistical analysis, medical or psychologically related sciences.
b. Tenure. A bar examiner should be appointed for a fixed term but should be eligible for reappointment if the examiner’s work is of high quality. Members of the Board should be appointed for staggered terms to insure continuity of policy, but there should be sufficient rotation in the personnel of the Board to bring new views to the Board and to insure continuing interest in its work.
c. Devotion to Duty. A bar examiner should be willing and able to devote whatever time is necessary to perform the duties of examiner.
d. Essential Conduct. A bar examiner should be conscientious, studious, thorough and diligent in learning the methods, problems and progress of legal education, in preparing bar examinations, and in seeking to improve the examination, its administration and requirements for admission to the Bar. Each examiner should be just and impartial in recommending the admission of applicants and should exhibit courage, judgment and moral stamina in refusing to recommend applicants who lack adequate general and professional preparation or who lack good moral character.
e. Adverse Influences, Conflicting Duties and Inconsistent Obligations. Bar examiners should not have adverse interests, conflicting duties nor inconsistent obligations which will in any way interfere or appear to interfere with the proper administration of their functions. Appointment or election to the bench at any level of the court system, federal, state, county or municipal, shall constitute a disability to serve as a bar examiner so long as such individual shall continue to serve in such capacity. Bar examiners should not participate directly or indirectly in courses for the preparation of applicants for bar admission nor act as a trustee of a law school or of a university with which a law school is affiliated. Bar examiners should so conduct themselves that there may be no suspicion that their judgment may be swayed by improper considerations.
Article I, Section 3 as it would appear:
Section 3. The Board of Governors of The Florida Bar shall submit to the Court not less than thirty days prior to the expiration of the term of any attorney member of the Board, and in case of a vacancy, within thirty days thereafter, its recommendations with respect to appointees. Such group of recommended appointees shall be thrice the number to be appointed.
*239 A joint committee composed of three members of the Board and three members of the Board of Governors of The Florida Bar shall submit to the Court not less than thirty days prior to the expiration of the term of any lay public member of the Board, and in the case of a vacancy, within thirty days thereafter, its recommendations with respect to appointees. Such group of recommended appointees shall be thrice the number to be appointed.
The following provisions will be pertinent in connection with the nominations to membership on the Board:
a. Qualifications. Attorney members shall be practicing attorneys with scholarly attainments and an affirmative interest in legal education and requirements for admission to the Bar. Lay Public members shall be nonlawyers and shall have an academic Bachelor’s Degree. It is desirable that lay public members possess educational or work-related experience of value to the Board such as educational testing, accounting, statistical analysis, medical or psychologically related sciences.
b. Tenure. A bar examiner should be appointed for a fixed term but should be eligible for reappointment if the examiner’s work is of high quality. Members of the Board should be appointed for staggered terms to insure continuity of policy, but there should be sufficient rotation in the personnel of the Board to bring new views to the Board and to insure continuing interest in its work.
c. Devotion to Duty. A bar examiner should be willing and able to devote whatever time is necessary to perform the duties of examiner.
d. Essential Conduct. A bar examiner should be conscientious, studious, thorough and diligent in learning the methods, problems and progress of legal education, in preparing bar examinations, and in seeking to improve the examination, its administration and requirements for admission to the Bar. Each examiner should be just, and impartial in recommending the admission of applicants and should exhibit courage, judgment and moral stamina in refusing to recommend applicants who lack adequate general and professional preparation or who lack good moral character.
e.Adverse Influences, Conflicting Duties and Inconsistent Obligations. Bar examiners should not have adverse interests, conflicting duties nor inconsistent obligations which will in any way interfere or appear to interfere with the proper administration of their functions. Appointment or election to the bench at any level of the court system, federal, state, county or municipal, shall constitute a disability to serve as a bar examiner so long as such individual shall continue to serve in such capacity. Bar examiners should not participate directly or indirectly in courses for the preparation of applicants for bar admission nor act as a trustee of a law school or of a university with which a law school is affiliated. Bar examiners should so conduct themselves that there may be no suspicion that their judgment may be swayed by improper considerations.
Article III, Section l.a. as it currently appears:
Section 1. No applicant shall be admitted to the Florida Bar Examination unless he or she furnishes to the Board:
a. Satisfactory evidence that (1) the applicant has received an academic Bachelor’s Degree granted on a basis of a four-year period of study in a college or university on the approved list of any one of the following regional accrediting associations or any Florida college or university approved by the Supreme Court of Florida.
(a) New England Association of Schools and Colleges;
(b) Middle States Association of Colleges and Schools/Commission on Higher Education;
(c) North Central Association of Colleges and Schools;
(d) Southern Association of Colleges and Schools — Commission on Colleges;
(e) Northwest Association of Schools and Colleges;
(f) Western Association of Schools and Colleges — Accrediting Commission for Senior Colleges.
*240 The academic Bachelor’s Degree referred to above must have been conferred at a time when such college or university was accredited or within 12 months of such accreditation. Otherwise, such applicant shall obtain a determination at the cost of the applicant by a credentials evaluation service or other professionals approved by the Board that the applicant’s education is the equivalent of a Bachelor’s Degree awarded by an accredited institution.
This section shall be applicable only to those applicants applying for admission to the Bar who enrolled in an accredited law school subsequent to April 28, 1988. For applicants who enrolled in an accredited law school subsequent to December 31, 1975, but prior to April 28, 1988, said applicants may, in the alternative to satisfaction of the requirements set forth above, successfully complete an examination designated by the Board evidencing attained knowledge equivalent to 120 semester hours of college study to be administered under the Board’s supervision. Applicants who enrolled in an accredited law school prior to December 31, 1975 shall be governed by previous requirements under Section 22(a) of Article IV. (Satisfactory evidence of at least two years’ in-residence undergraduate work if entry into law school was prior to December 31, 1960, or at least 3 years in-residence undergraduate work if entry into law school was subsequent to December 31, 1960, but prior to December 31, 1975, or the successful completion of a college equivalency examination to be administered under the Board’s supervision.)
Graduation from any one of the following institutions: the United States Military Academy, the United States Naval Academy, the United States Air Force Academy, the United States Coast Guard Academy, or the United States Merchant Marine Academy, will fully satisfy the requirement of this section.
Article III, Section l.a. as it would appear:
Section 1. No applicant shall be admitted to the Florida General Bar Examination unless he or she furnishes to the Board:
a. Satisfactory evidence that (1) the applicant has received an academic Bachelor’s Degree granted on a basis of a four-year period of study in a college or university on the approved list of any one of the following regional accrediting associations: or any Florida college or university approved by-the Supreme Court of Florida,
(a)(1) New England Association of Schools and Colleges;
(b)(2) Middle States Association of Colleges and Schools/Commission on Higher Education;
(e)(3) North Central Association of Colleges and Schools;
(d)(4) Southern Association of Colleges and Schools — Commission on Colleges;
(e)(5) Northwest Association of Schools and Colleges;
(f)(6) Western Association of Schools and Colleges — Accrediting Commission for Senior Colleges.
The academic Bachelor’s Degree referred to above must have been conferred at a time when such college or university was accredited or within 12 months of such accreditation. Otherwise, such applicant shall obtain a determination at the cost of the applicant by a credentials evaluation service or other professionals approved by the Board that the applicant’s education is the equivalent of a Bachelor’s Degree awarded by an accredited institution.
An applicant will fully satisfy the requirement of this section upon furnishing to the Board satisfactory evidence of (1) graduation from a law school outside the United States which educationally qualifies the applicant for licensing to practice law in the country in which the law school is located and (2) graduation from a full-time accredited law school within the United States as prescribed by Article III, Section lb.
This section shall be applicable only to those applicants applying for admission to the Bar who enrolled in an accredited law school subsequent to April 28, 1988. For applicants who enrolled in an accredited *241 law school subsequent to December 31, 1975, but prior to April 28, 1988, said applicants may, in the alternative to satisfaction of the requirements set forth above, successfully complete an examination designated by the Board evidencing attained knowledge equivalent to 120 semester hours of college study to be administered under the Board’s supervision. Applicants who enrolled in an accredited law school prior to December 31, 1975 shall be governed by previous requirements under Section 22(a) of Article IV. (Satisfactory evidence of at least two years’ in-residence undergraduate work if entry into law school was prior to December 31, 1960, or at least 3 years in-residence undergraduate work if entry into law school was subsequent to December 31, 1960, but prior to December 81, 1975, or the successful completion of a college equivalency examination to be administered under the Board’s supervision.)
Graduation from any one of the following institutions: the United States Military Academy, the United States Naval Academy, the United States Air Force Academy, the United States Coast Guard Academy, or the United States Merchant Marine Academy, will fully satisfy the requirement of this section.
Article IV, Section 11 as it currently appears:
Section 11. If any applicant or student registrant shall be dissatisfied with an administrative ruling of the Board not covered by Article III, Section 4, such applicant or student registrant may, within ten (10) days after receipt of written notice of the Board’s action, file an appropriate petition with the Clerk of the Supreme Court of Florida for review of the Board’s action. A copy of any such petition shall be served upon the Executive Director of the Board. The Board shall have fifteen (15) days after the service of said copy on the Executive Director in which to file a response to the petition with the Clerk of the Supreme Court of Florida and shall serve a copy thereof upon the applicant or student registrant. Service of a petition or response may be in person, by certified mail, or by registered mail. Thereafter, the matter shall be disposed of as the Court directs and any final action of the Court shall be duly entered in the minutes thereof.
Article IV, Sections 11 & 12 as they would appear:
Section 11. Any applicant or student registrant who is dissatisfied with an administrative ruling of the Board not covered by Article III, Section 4, may, within thirty (30) days after receipt of written notice of the Board’s action, file with the Board a petition for reconsideration with a fee of $20.00 as specified under the provisions of Article V, Section 12. Only one such petition for reconsideration may be filed.
Section 41.12. If any applicant or student registrant shall be dissatisfied with an administrative ruling of the Board not covered by Article III, Section 4, such applicant or student registrant may, within ten (40) thirty (30) days after receipt of written notice of the Board’s action, file an appropriate petition with the Clerk of the Supreme Court of Florida for review of the Board’s action. A copy of any such petition shall be served upon the Executive Director of the Board. The Board shall have fifteen (45) twenty-five (25) days after the service of said copy on the Executive Director in which to file a response to the petition with the Clerk of the Supreme Court of Florida and shall serve a copy thereof upon the applicant or student registrant. Service of a petition or response may-be-in -person, by- certified mail, or by registered mail. Thereafter, the matter shall be disposed of as the Court directs and any final action of the Court shall be duly entered in the minutes thereof. Article IV, Section 6, as it currently appears:
Section 6. Applicants seeking postponement of their submission to Part A or Part B of the General Bar Examination shall be permitted to do so upon payment of:
a. A fee of $30.00 as specified under Article V, Section 14.a., if a written no *242 tice of postponement is received at least seven (7) days in advance of the commencement of the administration of such examination; or
b.A fee of $50.00 as specified under Article V, Section 14.b., if a written notice of postponement is received thereafter but preceding the deadline for filing for the next administration of such examination.
All such applicants who have, previously postponed their submission to Part A or Part B of the General Bar Examination must bring their applications to current status by the filing of another examination application by the deadline as specified under the provisions of Article VI, Section 5.
Article IV, Section 6, as it would appear:
Section 6. The Board's character and fitness investigation will commence only upon receipt of a fully completed and notarized Application for Admission to The Florida Bar accompanied by the appropriate fee and the items set forth in Section 5.a. (1) and (2) and Section 5.b. (3) above. An application filed in a defective condition or without the appropriate fee will delay the commencement of the background investigation until the defective application is corrected or the fee is paid.
Section- -6. Section 7. Applicants seeking postponement of their....
(Renumber the remaining sections to acco-modate the addition of this item.)
Article V, Section 18 as it currently appears:
Section 18. Each request for a copy of any document or portion thereof filed by an applicant in the course of such applicant’s seeking admission to the General Bar Examination or The Florida Bar or for any certificate of the Board shall be accompanied by a fee of $15.00 for the first page and $.30 for each additional page.
Article V, Section 18 as it would appear:
Section 18. Each request for a copy of any document or portion thereof, except for Form No. 1, Application for Admission to The Florida Bar, filed by an applicant in the course of such applicant's seeking admission to the General Bar Examination or The Florida Bar or for any certificate of the Board shall be accompanied by a fee of $15.00 for the first page and $.30 for each additional page. Each request for a copy of the Form No. 1, Application for Admission to The Florida Bar, shall be accompanied by a fee of $25.00.
Article V, Section 4, as it now appears:
Section 4. Fees for late filing for admission to the General Bar Examination as provided under Article VI, Section 5, herein shall be:
a. As provided by Article VI, Section 5a.$30.00
b. As provided by Article VI, Section 5b.$60.00
c. As provided by Article VI, Section 5c.115.00
Article V, Section 4, as it would appear:
Section 4. Fees for late filing for admission to the General Bar Examination as provided under Article VI, Section 5, herein shall be:
a. As provided by Article VI, Section 5a. $3&6©$50.00
b. As provided by Article VI, Section 5b.$6⅜00$150.00
c. As provided by Article VI, Section 5c.115,00$300.00
d. As provided by Article VI, Section 5d.$600.00
Article VI, Section 5, as it now appears:
Section 5. Timely applications for admission to the February administration of the General Bar Examination shall be postmarked or received not later than the first Tuesday in January.
Timely applications for admission to the July administration of the General Bar Examination shall be postmarked or received not later than the first Tuesday in June.
Applicants seeking late filing into a General Bar Examination shall be permitted to do so upon payment of an additional fee of:
a. $30.00 as specified under Article V, Section 4.a., for those applications post *243 marked after the deadline and received on or before 30 days prior to administration of the examination;
b. $60.00 as specified under Article V, Section 4.b., for those applications postmarked after the deadline and received 10 to 29 days prior to administration of the examination;
c. $115.00 as specified under Article V, Section 4.c., for those applications received less than 10 days prior to the administration of the examination;
Applications for admission into the Multistate Professional Responsibility Examination (MPRE) shall be filed with the agency administering that examination within the time limitations set by that authority. The Multistate Professional Responsibility Examination (MPRE) is currently administered in March, August and November of each year.
Article VI, Section 5, as it would appear:
Section 5. Timely applications for admission to the February administration of the General Bar Examination shall be postmarked or received not later than the first Tuesday in January, November 15 prior to the examination.
Timely applications for admission to the July administration of the General Bar Examination shall be postmarked or received not later than the first Tuesday in June, May 1 prior to the examination.
Applicants seeking late filing into a General Bar Examination shall be permitted to do so upon payment of an additional fee of:
a, — $30.00 as specified under-Article V, Section 4,a., for those-applications postmarked after the-deadline and received on or-before 30 days prior to administration of the examination;
b. — $60.00 as specified under Article-^ Section 4,b.t for those applications postmarked after the deadline and received 10 to 29 days prior-to administration of the examination;
e, — $115.00 as specified under-Article V, Section 4.c., for those applications received less than 10- days-prior to the administration of the examination;
a. $50.00 as specified under Article V, Section 4.a„ for those applications postmarked or received on or before December 15 for the February examination, and for those applications postmarked or received on or before June 1 for the July examination;
b. $150.00 as specified under Article V, Section 4.b., for those applications postmarked or received on or before. January 15 for the February examination, and for those applications postmarked or received on or before July 1 for the July examination.
c. $300.00 as specified under Article V, Section 4,c„ for those applications received on or before February 15 for the February examination and for those applications received on or before July 15 for the July examination.
d. $600.00 payable by certified check, cashier’s check or money order as specified under Article V, Section 4,d„ for those applications received after February 15 for the February examination and after July 15 for the July examination.
If a deadline prescribed by this rule shall fall on a Saturday, Sunday, or holiday, then the deadline shall be extended until the end of the next day that is neither a Saturday. Sunday, nor holiday.
Applications for admission into the Multi-state Professional Responsibility Examination (MPRE) shall be filed with the agency administering that examination within the time limitations set by that authority. The Multistate Professional Responsibility Examination (MPRE) is currently administered in March, August and November of each year.