PER CURIAM.
This cause is before the Court on petition of Barry University School of Law requesting that this Court allow the release of the impounded Florida Bar examination results of the students who graduated in January, June, and July 2000, and January 2001; allow all graduates from these classes to take future Florida Bar examinations; and allow those graduates who failed the exam to retake the exam. We have jurisdiction. See art. V, § 15, *1051 Fla. Const. For the reasons that follow, we deny Barry 'University’s petition.
I.
This petition involves the application of rule 2-11.1 of the Rules of the Supreme Court Relating to Admissions to the Bar, which provides, in pertinent part:
2-11.1 Educational Qualification. To be admitted into the General Bar Examination and ultimately recommended for admission to The Florida Bar, an applicant must have received the degree of Bachelor of Laws or Doctor of Jurisprudence from an accredited law school (as defined in 4-13.2) at a time when the law school was accredited or within 12 months of accreditation or be found educationally qualified by the Board under the alternative method of educational qualification.
(Emphasis supplied.) Rule 4-13.2 defines an “accredited” law school as:
[A]ny law school approved or provisionally approved by the American Bar Association at the time of the applicant’s graduation or if graduation is within 12 months of accreditation.
The American Bar Association (“ABA”) granted Barry University provisional accreditation on February 4, 2002. In its petition, Barry University asserts that it does not seek a waiver from the twelvemonth window contained in rule 2-11.1. Further, Barry University does not challenge the validity or wisdom of rule 2-11.1. Moreover, Barry University explains that it is not requesting this Court to “second-guess” the ABA’s accreditation process. Rather, Barry University argues that, despite the fact that the ABA conferred provisional accreditation on February 4, 2002, the Court should consider, for the purpose of measuring the twelve-month rule contained in rule 2-11.1, an earlier report of the ABA Accreditation Committee (“Committee”) from January 2001, which recommended that Barry University receive provisional accreditation.
II.
The history of the law school that is now known as Barry University School of Law began in October 1997, when the University of Orlando School of Law submitted its application to the ABA for accreditation.[1] *1052 The 'ABA denied provisional accreditation in 1998. Barry University acquired the law school in December 1998. The University of Orlando School of Law and Barry University merged in June 2000, and the law school became known as Barry University School of Law.
In September 1999, Barry University applied for provisional accreditation from the ABA. In October 1999, an ABA site visit conducted by a site evaluation' team took place at Barry University pursuant to the ABA’s accreditation process. In April 2000, the Committee considered the law school’s application for provisional approval. The Committee ultimately found that Barry University had not substantially complied with five of the fifty ABA standards for accreditation. The Committee found fault with three areas: (1) admission of students with LSAT scores below 140 and the admission of two transfer students with low grade-point averages at the transferring law school; (2) failure of the school in the past to timely calculate grade point averages and to dismiss or remediate students in academic difficulty; and (3) grade inflation.
Barry University initially petitioned this Court to allow its January and June 2000 graduates to take the July 2000 bar examination despite the fact that the law school had not yet received provisional accreditation, and to allow these graduates “to submit evidence of timely ABA accreditation before admission to the bar rather than as a prerequisite to admission to the bar examination.” By order dated June 29, 2000, this Court granted Barry University’s request to allow its January and June 2000 graduates to sit for the bar exam, permitting the exam results to be released only if Barry University achieved accreditation at or before the ABA’s February 14-20, 2001, meeting.
In September 2000, Barry University submitted another application for provisional accreditation. A site visit took place from October 29 to November 1, 2000. In January 2001, based on this site visit, the Committee decided, by a divided vote, to recommend that Barry University receive provisional accreditation. However, on February 17, 2001, the Council of the Section of Legal Education (“Council”) rejected the Committee’s recommendation and did not grant the law school provisional accreditation. On February 26, 2001, the ABA informed the law school that “[ajfter review and consideration of the information before it,” the Council has “determined that [the law school] has not established that it is in substantial compliance with each of the Standards and has not presented a reliable plan for bringing it into full compliance with the Standards within three years.”
The Council based its conclusion on the following: (1) “examinations vary substantially in degree of difficulty”; (2) student papers did not “appear” to meet the law school’s own policies; and (3) the law school’s academic support program was still “under development.” Further, the Council noted the “high percentage of high grades,” the uncertain implementation of Barry University’s new academic retention policy, and the credentials of students admitted in fall 1999.
Barry University filed an emergency petition in this Court requesting that its *1053 June 2000 and January 2001 graduates be allowed “to submit evidence of the timely ABA accreditation of the law school before their admission to the Florida Bar rather than as a prerequisite to their admission to the February 2001 bar examination.” (Emphasis supplied.) The Court granted the emergency petition.
Barry University then filed with the Council a petition for reconsideration of the Council’s decision, and Barry University also appealed the Council’s decision to the ABA’s House of Delegates. Based on its pending appeal to the House of Delegates, Barry University petitioned this Court to allow its June and July 2001 graduates to sit for the July 2001 bar examination. On June 25, 2001, this Court issued an order allowing “the students who have applied and are ready to sit for the July 2001 General Bar Examination” to sit for the examination. The amended order provided as follows:
The Petition for a Special Exemption to Rules 2-11.1 and 4-13 of the Rules of the Supreme Court relating to the Admissions to the Bar is granted in part and the June 2001 and July 2001 graduates of Barry University School of Law may, upon submission of proper application, sit for the July 2001 General Bar Examination.
The General Bar Examination results of the Barry University School of Law graduates shall be impounded and released only if Barry University School of Law achieves accreditation for its law . school from the American Bar Association within twelve (12) months of graduation.

No future waivers will be considered until the AmericanBar Association has granted provisional accreditation to Barry University School of Law.

(Emphasis supplied.)
The ABA granted provisional accreditation on February 4, 2002.. .Accordingly, on February 13, 2002, this Court, “[biased upon the representation that the American Bar Association has granted provisional accreditation to Barry University School of Law as of February 4, 2002,” authorized the release of the July 2001 bar exam scores “of the Barry University graduates who graduated within .the 12 months immediately preceding the provisional approval.” [2]
HI.
Rule 2-11.1 unambiguously requires that an individual who seeks to become a member of the Florida Bar must satisfy the educational qualifications of being a graduate from an accredited law school, or a law school that has been accredited within twelve months of graduation.[3] As noted above, accreditation is *1054 defined as “any law school approved or provisionally approved by the American Bar Association at the time of the applicant’s graduation or if graduation is within 12 months of accreditation.”
In this case, the ABA granted Barry University provisional accreditation on February 4, 2002. Therefore, under the plain language of the rules, only those applicants who graduated on February 4, 2001, or after this date are entitled to be considered for admission to The Florida Bar. Barry University’s request that this Court determine an accreditation date prior to the ABA’s actual grant of provisional accreditation would require this Court to second-guess the ABA’s multi-tiered accreditation process and would be directly at odds with the plain language of rules 2-11.1 and 4-13.2. In addition, Barry University in its previous petitions to this Court requesting that we allow its graduates to take the Bar examination, contingent on subsequently receiving ABA accreditation within the twelve-month graduation window, implicitly recognized that the January 2001 favorable Committee recommendation was not the equivalent of ABA accreditation.
Furthermore, this Court’s precedent makes clear that we will no longer grant waivers to the accreditation requirement contained in rule 2-11.1. In Florida Board of Bar Examiners; In re Hale, 433 So.2d 969, 971 (Fla.1983), this Court recognized that its previous ad hoc approach of granting waivers “bears within it the appearance of discrimination.” Therefore, the Court adopted a new course of action in which the Court would no longer grant waivers of the accreditation rule. Id. at 972. The Court explained:
Some may argue that by this Court’s adherence to the requirement of ABA or AALS law school approval, we are abdicating our supervisory responsibility over bar admissions and unlawfully delegating our constitutional function to a private authority. This is simply not true. As stated by the Supreme Court of Minnesota when it faced the same argument:
It is ... rational for a state supreme court to conclude that the ABA is best equipped to perform the function of accrediting law schools.
[[Image here]]
We have not delegated our authority to the ABA but, instead, have simply made a rational decision to follow the standards of educational excellence it has developed.
In re Hansen, 275 N.W.2d 790, 794, 796 (Minn.1978), appeal dismissed, 441 U.S. 938, 99 S.Ct. 2154, 60 L.Ed.2d 1040 (1979).

Id.

We reaffirmed this policy in Florida Board of Bar Examiners re Massachusetts School of Law, 705 So.2d 898 (Fla.1998). In Massachusetts School of Law, an unaccredited law school sought a waiver of the accreditation requirement, contending that its educational program was substantially equivalent to an ABA-accredited law school. This Court rejected the request for waiver, explaining:
[Massachusetts Law School] here essentially asks this Court to evaluate non-accredited law schools on a case-by-case basis to determine whether the particular law school provides a legal education that is substantially equivalent to that from an ABA-accredited law school. However, as we stated in Hale, such an *1055 approach is “extremely difficult and would require -an inordinate amount of money as well as our judicial time.” Id. at 971-72. Indeed, as other state supreme courts have noted, “[w]e -have neither the time nor the expertise to investigate individually ... the program offered by specific law schools, and any attempt by us to do so would be inefficient and chaotic.” In re Hansen, 275 N.W.2d 790, 796 (Minn.1978), appeal dismissed, 441 U.S. 938, 99 S.Ct. 2154, 60 L.Ed.2d 1040 (1979).
In fidfilling our supervisory responsibility over bar admissions, we rely upon the ABA accreditation process as an “objective method of determining the quality of the educational environment of prospective attorneys.” Although, as MSL has pointed out, the ABA’s accreditation process and standards have been the subject of criticism in recent years, we are confident that the ABA is best equipped to evaluate the quality of education received at the many law schools throughout the nation. The process employed by the ABA is extensive and involves numerous detailed standards for law school organization and administration, the educational programs offered, the faculty, admissions, the library, and the actual physical facilities occupied by the school. Using these standards, law schools are inspected and, importantly, reinspected on an ongoing basis. Additionally, as a national organization, the ABA provides the benefit of a uniform process and uniform standards in accrediting law schools regardless of their geographical location. For these reasons, we reaffirm our policy ... against granting waivers of the ABA accreditation requirement.
Id. at 899 (emphasis supplied) (citation and footnote omitted).
Barry University contends that it is not requesting a waiver, but rather is simply requesting that the Court use the date the ABA found Barry to be in substantial compliance with each of the ABA standards as the date of accreditation for the purpose of rule 2-11.1. However, a waiver is essentially what Barry University is asking this Court to provide by allowing- those students who graduated more1 than twelve months before the time that actual accreditation was granted to be considered for admission to The Florida Bar. Further, although Barry University claims that it is not asking this Court to “second-guess the ABA or-to determine that it erred,” in fact by its request, Barry University would have- this Court go behind the ABA’s mul-ti-tiered process of decision-making and reach a determination that the ABA erred by not granting provisional accreditation in February 2001. Barry University’s request would have this Court return to its pre-Hale days where the Court granted and denied waivers on a case-by-case basis.
The Florida Board of Bar Examiners argues that because graduation from an ABA accredited law school is the only remaining educational requirement for admission to The Florida Bar, there is a stronger basis now for denying petitions for educational waivers than in 1983, when this Court issued its opinion in In re Hale, 433 So.2d 969 (Fla.1983). Since the Hale decision, the Court has continued to recognize that strict enforcement of the provisions of rule 2-11.1 is the best approach.
Furthermore, we conclude that Barry University’s reliance on this Court’s 1973 decision in Florida Board of Bar Examiners; In re Eisenson, 272 So.2d 486 (Fla.1973), is misplaced. The rule in effect in 1973 provided that graduation must occur “in the same calendar year in which such *1056 school was so accredited.”[4] In that case, although the ABA’s evaluation committee conducted a favorable examination and investigation in a timely fashion, the ABA did not act on the favorable recommendation until nine months later, which was approximately fourteen months after the student’s graduation. See id. at 487. The Court concluded that a waiver of the accreditation requirement was justified “in light of the circumstances.” Id.
Unlike the facts in Eisenson, the ABA in this case did act on Barry’s site evaluation conducted in November 2000. In fact, the Council at its February 17, 2001, meeting acted unfavorably on the site committee’s report concerning Barry University. Barry University would have this Court overlook the Council’s actions in this case in assessing when Barry University came into substantial compliance with the ABA’s standards. This we decline to do. Therefore, we conclude that Eisenson does not control the outcome of this case.
Finally, we note that all students who enrolled at Barry University while it was unaccredited were on notice of the risk in attending an unaccredited law school when they began their studies at Barry University. Furthermore, each of our prior orders allowing Barry University students to sit for the bar exam was contingent on the law school obtaining provisional accreditation within twelve months of these students’ graduations. As noted above, Barry University implicitly, if not explicitly, recognized the importance of the ABA’s grant of provisional accreditation each time it requested permission from this Court to allow its graduates to take the bar examination provided the graduates subsequently submitted “evidence of the timely ABA accreditation of the law school.” Therefore, based upon the plain language of rule 2-11.1, we conclude that the twelve-month window must be measured from the date the ABA actually awards provisional accreditation to a law school. Furthermore, we reaffirm our decisions in Hale and Massachusetts School of Law and decline to grant a waiver of the accreditation requirement. Accordingly, Barry University’s petition is denied.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
LEWIS, J., recused.

. The ABA’s law school accreditation procedure is a multi-tiered process that has been described as follows:
The ABA’s Section of Legal Education and Admissions to the Bar (“Section”) is responsible for law school accreditation. When a law school applies for provisional accreditation, the ABA will send a site evaluation team to conduct an inspection of the law school. The site evaluation team prepares a report based on their findings, and the law school is given an opportunity to respond to the report. The Accreditation Committee then meets to consider the school’s application and reviews the application materials, including the report of the site evaluation team, and typically hears from representatives from the law school. Based on these submissions, the Accreditation Committee recommends for or against provisional accreditation.
If the Accreditation Committee recommends that the school receive provisional accreditation, the recommendation is then sent to the Council (“Council”) of the ABA Section of Legal Education and Admissions to the Bar. If the Accreditation Committee recommends against accreditation, the Council will review the decision only after a timely appeal by the law school. When the council considers the Committee’s recommendation, the Council will review the materials submitted regarding the school’s application and hear from representatives of the-"law school. The Council then makes a decision on the law school’s application.
If the Council votes to grant a school’s application for accreditation, this decision does not become effective until the ABA’s House of Delegates, the body that controls, formulates policies for, and administers the ABA, reviews the decision. If the Council *1052 votes against the application for accreditation, then the school may appeal this decision to the House of Delegates. The House will then either agree with the Council’s decision or refer the decision back to the Council for further consideration, a maximum of two times. The decision of the Council following the second referral is final.
Staver v. American Bar Ass’n, 169 F.Supp.2d 1372, 1374 (M.D.Fla.2001) (footnote omitted) (emphasis supplied).

. Nine Barry University students who met the educational qualification requirement contained in rule 2-11.1 sat for the July 2001 bar examination. Of these nine students, two passed the exam. Further, seventeen Barry University students who met the educational qualification requirement contained in rule 2-11.1 sat for the February 2002 bar examination. Of these seventeen students, seven passed the exam.

. Rule 2-11.2 provides an alternative method of educational qualification, which requires:
(1) evidence as the Board may require that the applicant was engaged in the prac-tiqe of law in the District of Columbia or in other states of the United States of American, or in practice in federal courts of the United States or its territories, possessions ■ or protectorates for at least 10 years, and was in good standing at the bar of said jurisdictions in which the applicant practiced; and (2) a representative compilation of the work product in the field of law showing the scope and character of the applicant's previous experience and practice at the bar, including samples of the quality of the applicant's work, such as pleadings, briefs, legal memoranda, con *1054 tracts or other working papers which the applicant considers illustrative of the applicant’s expertise and academic and legal training.

. The Court interpreted the term "calendar year” to include the twelve-month period following graduation, regardless of the month in which the applicant graduated. See id. at 487 n. 1.