**NORTHEASTERN FLORIDA CHAPTER OF The ASSOCIATION OF GENERAL CONTRACTORS OF AMERICA, a Florida corporation not for profit, Plaintiff–Appellee,**

v.

**CITY OF JACKSONVILLE, FLORIDA, a Florida municipal corporation, Tommy Hazouri, in his official capacity as Mayor of the City of Jacksonville, Florida, Defendants–Appellants.**

No. 89–3410.

United States Court of Appeals, Eleventh Circuit.

March 2, 1990.

James L. Harrison, City of Jacksonville, Jacksonville, Fla., for defendants-appellants.

G. Stephen Parker, Southeastern Legal Foundation, Inc., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, EDMONDSON, Circuit Judge, and HILL, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

This case involves review of a preliminary injunction prohibiting—on fourteenth amendment grounds—enforcement, until completion of a full trial to be held in the future, of a city ordinance that allocates a portion of municipal contracting dollars to businesses owned or controlled by members of minority groups. The ordinance, in pertinent part, sets aside ten percent of the amount appropriated by the City of Jacksonville for capital improvements and other construction contracts to be awarded to Minority Business Enterprises (MBEs). MBEs are enterprises which are more than fifty percent owned by women or members of designated minority groups. Plaintiff is a trade association; most of its members are not MBEs. Although we too question the ordinance's constitutionality, we reverse the grant of preliminary injunction because we believe that the district court abused its discretion in imposing such a drastic remedy in the circumstances and on the limited record before the court.

A preliminary injunction is a powerful exercise of judicial authority in advance of trial. The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. *Amer. Radio Ass'n v. Mobile Steamship Ass'n, Inc.*, 483 F.2d 1, 4 (5th Cir.1973)[1]. Since 1984, the status quo in Jacksonville has been the existence of a municipal set-aside program. To justify a preliminary injunction, the plaintiff must plainly establish four preconditions: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result to the defendants, and (4) a showing that the public interest will not be disserved by grant of a preliminary injunction. *Cunningham v. Adams*, 808 F.2d 815, 819

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 7, 1981.

(11th Cir.1987); *Johnson v. United States Dep't of Agric.*, 734 F.2d 774, 781 (11th Cir.1984). "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites. 'The burden of persuasion in all of the four requirements is at all times upon the plaintiff.'" *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983) (quoting *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974)); *accord Cunningham*, 808 F.2d at 819; *Zardui–Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985).

■ In this country, democracy in government is, of course, viewed as a good and normal thing. When a federal court before trial enjoins the enforcement of a municipal ordinance adopted by a duly elected city council, the court overrules the decision of the elected representatives of the people and, thus, in a sense interferes with the processes of democratic government. Such a step can occasionally be justified by the Constitution (itself the highest product of democratic processes). Still, preliminary injunctions of legislative enactments—because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits—must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts.

■ The district court found for plaintiff on each of the four preconditions for a preliminary injunction. We need not address each element because we conclude that no showing of irreparable injury was made. The plaintiff's "success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm." *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir.1983) (affirming denial of preliminary injunction in environmental case); *accord Jefferson County*, 720 F.2d at 1520 n. 21.

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). A showing of irreparable harm is "the *sine qua non* of injunctive relief." *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir.1978). The injury must be "neither remote nor speculative, but actual and imminent". *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir.1989). An injury is "irreparable" only if it cannot be undone through monetary remedies. "The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90, 94 S.Ct. at 953; *accord Jefferson County*, 720 F.2d at 1520.

The district court found that "a continuation of the MBE programs [would] result in an on-going violation of Plaintiffs' constitutional rights [which] ... by itself, is sufficient to show irreparable injury to the Plaintiffs." Order at 7. This is incorrect.

No authority from the Supreme Court or the Eleventh Circuit has been cited to us for the proposition that the irreparable injury needed for a preliminary injunction can properly be presumed from a substantially likely equal protection violation. In this case, no witnesses or other evidence was submitted on the issue of irreparable injury. The only area of constitutional jurisprudence where we have said that an on-going violation constitutes irreparable injury is the area of first amendment and right of privacy jurisprudence. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir.1983); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir.1981). The rationale behind these decisions was that chilled free speech and invasions of privacy, because of their intangible nature, could not be compensated for by monetary damages; in other words, plaintiffs could not be made whole. The

facts of this case do not fit the rationale of these decisions. This case involves neither a first amendment nor a right of privacy claim; and the damage to plaintiff here is chiefly, if not completely, economic.

*Cunningham v. Adams,* 808 F.2d 815 (11th Cir.1987), concerned a claim of governmental racial discrimination in awarding contracts and a request for a preliminary injunction by the plaintiff. We concluded in *Cunningham* that, when the plaintiff's ultimate injury is that contracts will be awarded to someone else, plaintiff has failed to make a showing of irreparable injury. 808 F.2d at 821–22. As in *Cunningham,* if plaintiff is successful here, the court can direct the City to award municipal contracts to plaintiff's members who would have successfully bid for contracts in the absence of the set-aside program. Moreover, the City can award lost profits or other monetary damages to compensate a contractor that has been wrongfully denied a contract.

■ The district court also said that "financial hardship with difficult damage calculations *may* occur to the Plaintiffs if these programs continue to be implemented during the pendency of this lawsuit." Order at 7 (emphasis added). Nothing in the record, apart from a conclusory allegation of "irreparable harm" in the verified complaint and an assertion of speculative economic injury by plaintiff's counsel at the injunction hearing, supports the judge's finding of irreparable injury. Conjecture about a possibility of difficulties with damage computations is inadequate to support an injunction before trial. Because plaintiff presented no evidence on the issue, we cannot agree that irreparable injury is "apparent". In addition, that difficult damage calculations "may" occur is not enough. *See Sampson,* 415 U.S. at 88–89, 94 S.Ct. at 951–52. Furthermore, because no evidence was received, we may review the district court's observations on a clean slate and reach our own assessment of the nature of the injury. *See Mayo v. Lakeland Highlands Canning Co.,* 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774

(1940) ("The observations made in the course of the [trial court] opinion are not, in any proper sense, findings of fact upon these vital issues [irreparable injury]. Statements of fact are mingled with arguments and inferences for which we find no sufficient basis either in the affidavits or the oral testimony.").

The plaintiff association failed to bring forth representatives who could assert injury from the set-aside program. An association which gains standing by virtue of its membership cannot hide behind the associational structure. We expect that nonminority contractors can, by taking reasonable steps, quantify their claims for the purpose of seeking monetary relief from the City if a nonminority contractor has been improperly rejected in favor of a minority contractor. Put differently, that persons injured by the set-aside program cannot obtain adequate relief by money damages and injunctive relief following a full trial is—from the record in this case—unclear. We conclude that plaintiff has failed to demonstrate irreparable injury entitling it to preliminary injunctive relief.

After *Richmond v. J.A. Croson,*[2] — U.S. ——, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989), we admit to doubts about whether the Jacksonville set-aside program can survive the strict scrutiny required by the Supreme Court. Nevertheless, keeping in mind the deference due to laws enacted by democratically elected local governments, we believe that the district court should have developed a more complete record on which to evaluate the circumstances in which the Jacksonville ordinance was passed and the consequences of immediate judicial action in advance of a full and fair trial. The present record is inadequate— especially on irreparable injury—to warrant the extraordinary remedy of preliminary injunction. Because no necessity for an injunction has been shown, we REVERSE the issuance of a preliminary injunction and REMAND for an expedited trial or other disposition on the merits.

---

**2.** *Croson* was not a preliminary injunction case.

**TJOFLAT, Chief Judge, specially concurring:**

I concur in the judgment of the court. I agree with the court that plaintiff has not made a showing of irreparable injury sufficient to support injunctive relief. In my view, however, the plaintiff-association's failure to allege with particularity that its members suffered injury, actual or threatened, should end the inquiry at an earlier point: the plaintiff-association lacks standing to sue.[1] On this issue, I adhere to the position developed more fully in my dissent in *Sims v. Florida Dep't of Highway Safety and Motor Vehicles*, 862 F.2d 1449, 1464–68 (11th Cir.) (en banc), *cert. denied*, — U.S. —, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989).[2]

An association, such as the Northeastern Florida Chapter of the Association of General Contractors of America (plaintiff), may, under certain circumstances, have standing to litigate its members' claims. *See Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). A prerequisite of representative standing, however, is that the members would have standing in their own right were they to bring suit themselves, *see Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343–45, 97 S.Ct. 2434, 2441–42, 53 L.Ed.2d 383 (1977), and to have standing in their own right, the members would have to show that they have suffered (or will suffer) an actual (or threatened) injury, *see Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). As the Supreme Court stated in *Warth*, affirming the dismissal of a homebuilders association's complaint on the ground that the association lacked standing:

The complaint refers to no specific project of any of its members that is currently precluded either by the ordinance or by respondents' actions in enforcing it. There is no averment that any member has applied to respondents for a building permit or a variance with respect to any current project.... In short, ... Home Builders has failed to show the existence of any injury to its members of sufficient immediacy and ripeness to warrant judicial intervention.

*Warth*, 422 U.S. at 516, 95 S.Ct. at 2214.

In the current case, the plaintiff's complaint alleges that nonminority members "would have been eligible to, and would have, bid" on contracts set aside for minority business enterprises. The complaint fails, however, to identify any member who was not allowed to bid on a particular project or to plead facts tending to establish that member's eligibility to bid. Nor does the complaint refer to any specific contract or subcontract that would have been awarded to a nonminority bidder but for the set-aside ordinance. It is the plaintiff's responsibility clearly to allege particular facts that demonstrate its standing, *see id.* at 518, 95 S.Ct. at 2215, and it is not the role of this court "to speculate concerning the existence of standing nor to [infer] support for the plaintiff," *Anderson v. City of Alpharetta*, 770 F.2d 1575, 1582 (11th Cir.1985). Although it is a close question, I conclude that, under *Warth*, plaintiff did not fulfill its responsibility of establishing the standing of its individual members and therefore lacks representative standing to litigate its members' claims. *See City of Alpharetta*, 770 F.2d at 1582–83 (organization lacked standing to challenge statute that forestalled development of low-income housing because orga-

---

**1.** A federal court is required to consider the question of standing whether or not it is raised by the parties: "A threshold question in every federal case is whether the plaintiff has made out a justiciable case or controversy within the meaning of article III." *Church of Scientology Flag Serv. Org. v. City of Clearwater*, 777 F.2d 598, 606 (11th Cir.1985), *cert. denied*, 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986). This requires that in every case "the minimum

constitutional standing requirements be demonstrated." *Id.*

**2.** The *Sims* court ignored Supreme Court pronouncements on representative standing. It held cursorily that a plaintiff-association could litigate on behalf of its members but did not address the plaintiff's failure to allege that any of its members suffered actual or threatened injury. *Sims*, 862 F.2d at 1459.

nization failed to allege facts demonstrating with particularity that any individual had sought or would seek housing in area of project).

Accordingly, I concur in the judgment of the court reversing the district court's issuance of a preliminary injunction but do so because the plaintiff failed to establish its standing to challenge the set-aside ordinance.