Anita L. STAVER, Scott Blaue; Cesery L. Bullard, Terry Covert, Darylaine Hernandez, Timmy McClain, Stephanie Papoulis, Shannon Keith Turner, individually, and on behalf of all others similarly situated; Michael M. O'Brien, individually, and on behalf of all others similar situated, and Armando R. Payas, Plaintiffs,

v.

AMERICAN BAR ASSOCIATION, Defendant.

No. 6:01–CV–873–ORL–31KRS.

United States District Court, M.D. Florida, Orlando Division.

Oct. 24, 2001.

Mathew D. Staver, Erik W. Stanley, Longwood, FL, Larry L. Crain, Brent-wood Law Office, Brentwood, TN, for plaintiff.

David B. King, Mayanne Downs, Thomas A. Zehnder, King, Blackwell & Downs, P.A., Orlando, FL, David T. Pritikin, Anne E. Rea, Michael P. Doss, Sidley, Austin, Brown & Wood, Chicago, IL, for American Bar Ass'n.

## ORDER

PRESNELL, District Judge.

This cause comes on for consideration of Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 3, filed July 24, 2001), Defendant's opposition thereto (Doc. 67, filed August 31, 2001), and both parties' reply memoranda (Doc. 77, filed September 10, 2001; Doc. 93, filed October 5, 2001). Oral argument on Plaintiffs' preliminary injunction motion was held before the Court on October 12, 2001.

## I. *Background Facts*

In the State of Florida, applicants for admission to the bar must graduate from a law school that has received full or provisional accreditation from the American Bar Association ("ABA") within at least twelve months of their graduation. Plaintiffs have brought this suit alleging that the ABA violated federal and state antitrust laws as well as the Illinois General Not for Profit Corporation Act in denying Barry's application for provisional accreditation. The Plaintiffs include graduates and current students of Barry School of Law ("Barry") and two lawyers who are members of the ABA and employers of Barry graduates.[1]

---

1. The Plaintiffs have moved for leave to file a second amended complaint. This motion is still pending, and the second amended com-plaint has not been considered in connection with Plaintiffs' motion for preliminary injunction.

### A. The ABA's Accreditation Process

The ABA's Section of Legal Education and Admissions to the Bar ("Section") is responsible for law school accreditation. When a law school applies for provisional accreditation,[2] the ABA will send a site evaluation team to conduct an inspection of the law school. The site evaluation team prepares a report based on their findings, and the law school is given an opportunity to respond to the report. The Accreditation Committee then meets to consider the school's application and reviews the application materials, including the report of the site evaluation team, and typically hears from representatives from the law school. Based on these submissions, the Accreditation Committee recommends for or against provisional accreditation.

If the Accreditation Committee recommends that the school receive provisional accreditation, the recommendation is then sent to the Council ("Council") of the ABA Section of Legal Education and Admissions to the Bar. If the Accreditation Committee recommends against accreditation, the Council will review the decision only after a timely appeal by the law school. When the Council considers the Committee's recommendation, the Council will review the materials submitted regarding the school's application and hear from representatives of the law school. The Council then makes a decision on the law school's application.

If the Council votes to grant a school's application for accreditation, this decision does not become effective until the ABA's House of Delegates, the body that controls, formulates policies for, and adminis-ters the ABA, reviews the decision. If the Council votes against the application for accreditation, then the school may appeal this decision to the House of Delegates. The House will then either agree with the Council's decision or refer the decision back to the Council for further consideration, a maximum of two times. The decision of the Council following the second referral is final.

### B. Barry's Application for Provisional Accreditation

In 1999, Barry University acquired the University of Orlando School of Law. At the time, the law school had not yet received accreditation from the ABA.[3] In September 1999, Barry University School of Law applied for provisional accreditation from the ABA. The ABA conducted its site visit in October 1999, and in May 2000, the Accreditation Committee notified Barry that it recommended the denial of Barry's application for provisional accreditation. Rather than pursuing its application further before the Council, Barry decided to reapply for accreditation.

In September 2000, Barry submitted another application for provisional accreditation. The ABA then undertook another site visit from October 29 to November 1, 2000. Based on this site visit, the Accreditation Committee decided, by a divided vote, to recommend that Barry receive provisional accreditation. The Committee notified the school of its recommendation on February 6, 2001. On February 17, 2001, representatives from Barry Law School, including Dean Stanley Talcott, appeared before the Council regarding Bar-

---

2.  In order to receive provisional accreditation from the ABA, a law school must demonstrate that it is in substantial compliance with the ABA's Standards and that it has a reliable plan for coming into full compliance with the Standards within three years of receiving provisional approval.

3.  The University of Orlando School of Law had applied for accreditation from the ABA, but their application did not result in accreditation.

ry's application. The Council then decided to deny Barry provisional accreditation, and sent Barry formal notice of this decision on February 26, 2001. Barry appealed this decision to the ABA's House of Delegates, but in July 2001 agreed with the Council to drop its appeal and continue its application before the Council. The ABA recently conducted an additional site visit during September 2001, and the Council is scheduled to act on Barry's application during its February 2002 meeting.

### C. *Plaintiffs' Claims*

On July 24, 2001, Plaintiffs filed suit alleging that the ABA has violated federal and state antitrust laws, as well as the Illinois General Not for Profit Corporation Act, in its consideration of Barry's application for provisional accreditation. Plaintiffs base their antitrust claims on their complaint that the Council improperly considered that a publicly funded law school will be located in Orlando. The Plaintiffs point to the Council's reliance on Finding 4 of the Accreditation Committee to argue that there is evidence that the Council had anti-competitive purposes in denying Barry's application. Finding 4 states:

> Neither the 1995 feasibility study nor any document subsequently prepared by the University has explicitly considered the expansion of publicly funded legal education in Florida. After the October 2000 site visit took place, the Florida legislature determined that one of the two additional publicly funded law schools it had decided to establish would be located in Orlando, as part of Florida A & M University. Officials of the University predict that Barry's identity as a religiously based university and its ability to recruit regionally and nationally based on its Catholic mission will enable the Law School to meet enrollment goals in numbers and quality, despite the presence of a state-funded law school in the area.

(Doc. 1, Exh. 10). The Plaintiffs contend that Barry met the ABA's Standards for provisional accreditation, but that the Council denied Barry's application for provisional accreditation for anti-competitive reasons.

Plaintiffs' Illinois corporate law claim is based on their assertion that the decision-making structure of the ABA violates the Illinois General Not for Profit Corporation Act ("Illinois Act"). In particular, the Plaintiffs allege that the Council, in their view an advisory body, makes binding decisions on the corporation in violation of 805 Ill. Comp. Stat. Ann. § 105/108.40(d).

The current accreditation decision-making structure is the result of the ABA's efforts to comply with the U.S. Department of Education's regulations regarding nationally recognized accrediting agencies. These regulations require that a trade association wanting to be a recognized accrediting agency have a "separate and independent" body that makes accreditation decisions. *See United States v. American Bar Ass'n,* 135 F.Supp.2d 28, 30 (D.D.C. 2001). Based on these regulations, the ABA amended its structure so that the House of Delegates may review the Council's decisions and remand to the Council for further consideration a maximum of two times, but the House must accept the Council's decision on the third time. *Id.* This decision-making structure has been made part of a consent decree entered into between the ABA and the U.S. Department of Justice. *See id.* at 29–32. Plaintiffs contend that the ABA's current decision-making structure violates the Illinois Act.

In addition to these claims, the Plaintiffs allege that the ABA has violated Rule 5 of the ABA's Rules of Procedure for Approval of Law Schools. Rule 5 governs the

Council's review of the Accreditation Committee's recommendation regarding provisional or full accreditation. Rule 5(a) provides that if the Accreditation Committee recommends that accreditation be granted, the recommendation will be placed on the Council's agenda. If, on the other hand, the Committee recommends against accreditation, then Rule 5(b) provides that the school can appeal the decision to the Council, and the "appeal to the Council shall constitute a de novo proceeding." Plaintiffs read Rule 5(a)'s silence regarding the standard of review to mean that the Council cannot review the Accreditation Committee's recommendation to accredit de novo. Based on this reading, Plaintiffs contend that the Council has violated its own Rules, since it ostensibly engaged in a de novo review of the Accreditation Committee's recommendation to approve Barry School of Law.

Plaintiffs have requested that this Court enter preliminary injunctive relief, because of their concern that if the ABA does not accredit Barry soon, they will be unable to practice law, particularly in the State of Florida. Specifically, Plaintiffs have requested the Court to issue a preliminary injunction that would: (1) enjoin the ABA from engaging in *ultra vires* action in violation of the Illinois Act, (2) require the ABA to follow Rule 5 of the Rules of Procedure for Approval of Law Schools, which would prohibit the Council from reviewing the decision of the Accreditation Committee de novo, (3) enjoin the ABA from considering anti-competitive factors in its accreditation process, and/or (4) order the ABA to grant Barry Law School provisional accreditation.

II. *Preliminary Injunction Standard*

To obtain a preliminary injunction, the plaintiff must show:
(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would not disserve the public interest.

*Suntrust Bank v. Houghton Mifflin Co.*, No. 01–12200, 2001 WL 1193890, *7 (11th Cir. Oct.10, 2001) (quoting *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir.1998)). Plaintiffs bear the burden of proving each of these four factors. *Nnadi v. Richter*, 976 F.2d 682, 690 (11th Cir.1992).

The primary purpose of a preliminary injunction is to "preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank*, 2001 WL 1193890, at *7 (quoting *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir.1990)). A mandatory preliminary injunction requiring defendant to take affirmative action is proper only in "rare instances." *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir.1979).

III. *Analysis*

A. *Ripeness*

The ABA contends that the Plaintiffs should not receive preliminary injunctive relief because their claims are not ripe. Specifically, the ABA argues that Plaintiffs claims are not ripe, because Barry's application is still pending before the Council. After the Council denied provisional accreditation in February 2001, Barry appealed the decision to the House. Barry then agreed with the ABA to withdraw its appeal and continue its application until the Council acts on it during its February 2002 meeting.

Ripeness raises both "jurisdictional and prudential concerns." *Pittman v. Cole*, 267 F.3d 1269, ——, 2001 WL 1167749, *5 (11th Cir.2001) (quoting *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir.1997)). The

purpose of the ripeness doctrine is to prevent "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." *Id.* (quoting *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1315 (11th Cir.2000)). When considering whether a claim is ripe, the Court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.*

▮ Considering first the issue of fitness, the Eleventh Circuit has noted that "claims are less likely to be considered 'fit' for adjudication when they ... require 'speculation about contingent future events.'" *Id.* at ——, 2000 WL 1035381, *6 (quoting *Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir.1995)). This concern exists, as in this case, where the decision-making body has yet to render its final decision. *See id.* at —— – ——, 1995 WL 340073, *6 *7; *see also Digital Properties, Inc.,* 121 F.3d at 590. The basis of the Plaintiffs' claim is that the ABA has acted improperly in applying its Standards and denying Barry provisional accreditation. Barry appealed this decision to the ABA's House of Delegates, but then agreed to continue its application before the Council. The Council will act again on Barry's application next February. Because the ABA has not yet reached a final decision on Barry's application, the Plaintiffs' claims are not ripe.

The Plaintiffs will also not suffer a hardship by having to wait until the Council reaches its decision on Barry's application in February. Plaintiffs admitted during the hearing that the current Barry students will not be harmed if the Court allows the ABA to proceed with Barry's accreditation application. Therefore, as to these students, their claims are premature. The Plaintiffs who graduated from Barry in January and June 2000 claim that they will be unable to practice law in the State of Florida if the ABA does not accredit Barry soon. Pursuant to the Florida Supreme Court's orders, these graduates' bar examination scores were to remain impounded unless Barry received accreditation by, at the latest, August 2001.[4] Accordingly, if the Plaintiffs have been harmed, the harm has already occurred. Whether an injunction issues or not, the ability of the 2000 graduates to practice law in Florida will still depend on the Florida Supreme Court's decision.[5]

4. The Florida Supreme Court has granted the petitions of graduates of Barry law school to sit for the Florida bar examination, even though Barry has not yet received provisional accreditation. On June 29, 2000, the Florida Supreme Court granted permission for the January and June 2000 graduates to sit for the July 2000 bar exam, but their scores were to be impounded and released only if Barry received accreditation at or before the ABA's February 2001 meeting (Doc. 67, Exh. 2). On February 23, 2001, the Florida Supreme Court granted permission for the June 2000 and January 2001 graduates to sit for the February 2001 bar examination (Doc. 67, Exh. 2). The scores of the June 2000 were to be impounded and released only if Barry received ABA accreditation at or before the ABA's August 2001 meeting (Doc. 67, Exh. 2). The scores of the January 2001 graduates would be impounded and released only if the school received accreditation from the ABA within twelve months of their graduation (Doc. 67, Exh. 2). Finally, on June 28, 2001, the Florida Supreme Court granted permission for the June 2001 and July 2001 graduates to sit for the July 2001 bar exam, but their scores would be impounded and not released unless Barry received ABA accreditation within twelve months of their graduation (Doc. 67, Exh. 2). In this Order, the Florida Supreme Court also stated that "[n]o future waivers will be considered until the American Bar Association has granted provisional accreditation to Barry University School of Law." (Doc. 67, Exh. 2).

5. Plaintiffs' other requests for injunctive relief—enjoining the ABA from acting *ultra*

Therefore, the Court finds that refraining from entering injunctive relief will not be a hardship on the Plaintiffs.

### B. *Preliminary Injunction Analysis*

For similar reasons, even if Plaintiffs claims were ripe, Plaintiffs' request for a preliminary injunction would fail because they have not established that they would be irreparably harmed without injunctive relief. The "basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Northeastern Fla. Chapter of Ass'n of General Contractors*, 896 F.2d at 1285 (quoting *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)). While the Court has substantial doubts that the Plaintiffs have established a substantial likelihood of success on the merits, the Court has determined that the Plaintiffs will not be irreparably harmed, and preliminary injunctive relief is therefore inappropriate. As the Eleventh Circuit recently held, "even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir.2000).

Plaintiffs allege that the 2000 graduates will face irreparable injury if injunctive relief is not ordered in this case. They specifically allege that absent a preliminary injunction, these graduates will never be able to practice law. The Court notes as a factual matter that these students may be admitted to practice law in states that allow admission through means other

than graduation from an ABA-accredited law school. *See Massachusetts School of Law at Andover v. American Bar Ass'n*, 107 F.3d 1026, 1030 (3d Cir.) ("Many states have methods of satisfying the legal education requirement other than graduation from an ABA-accredited school."), *cert. denied*, 522 U.S. 907, 118 S.Ct. 264, 139 L.Ed.2d 191 (1997). The Plaintiffs appear to complain, however, that they will be unable to practice as attorneys in the State of Florida unless Barry receives provisional accreditation from the ABA.

Under the Rules of the Florida Supreme Court Relating to Admissions to the Bar, applicants to the Florida bar must have graduated from a school that was accredited, provisionally or fully, during their attendance or within twelve months of graduation.[6] Plaintiffs cite *In re Eisenson*, 272 So.2d 486 (Fla.1973) to argue that:

> The clock is ticking and is almost expired on the 2000 graduates. If the ABA does not grant provisional accreditation to Barry based upon the site visit, it is highly probable that the 2000 graduates will suffer irreparable harm. This Court's immediate intervention is necessary to prohibit such a disastrous and unfortunate result.

(Doc. 3 at 3).

In the case of *In re Eisenson*, a graduate of Baltimore School of Law sought admission to the Florida Bar. 272 So.2d at 487. When the student graduated, the law school had not been approved or provisionally approved by the ABA. *Id.* Five months after the student's graduation, the ABA conducted its examination of the school.

---

*vires*, from violating Rule 5 regarding de novo review, and from considering anti-competitive factors—will also not affect their situation regarding bar admissions requirements. These requests for relief, if they were granted, would affect the ABA's consideration of Barry's application in February.

6. The Court notes that in Florida, an applicant who did not attend an ABA-accredited law school can seek admission to the Florida bar based on at least ten years experience in the practice of law in another state. *See In re Massachusetts School of Law*, 705 So.2d 898, 899–900 & n. 3 (Fla.1998).

*Id.* At the ABA's next annual meeting, fourteen months after the student's graduation, the ABA provisionally approved the law school. *Id.* The Florida Supreme Court held that since the provisional accreditation was based on the evaluation conducted five months after the student's graduation, the student should be given a waiver of the 12 month rule. *Id.* The Court found that the student should receive this waiver since "the requirements for provisional accreditation [were] met during the calendar year following the applicant's graduation, but the American Bar Association fail[ed] to act on its findings within the 12 month period provided by the Rules." *Id.*

Whether the reasoning of this case will apply to situation of the 2000 graduates is the exclusive province of the Florida Supreme Court. Under the Florida Constitution, the Florida Supreme Court has "exclusive jurisdiction to regulate the admission of persons to the practice of law...." Fla. Const. art. 5, § 15. The Florida Supreme Court is the appropriate body to determine, if the ABA does accredit Barry, whether the accreditation

and the site visit(s) on which the accreditation is based would allow the Plaintiffs to seek admission to the Florida bar. An order from this Court is not necessary to avoid an "imminent" harm. *See Northeastern Fla. Chapter of Ass'n of Gen. Contractors,* 896 F.2d at 1285.

■ The only remedy that Plaintiffs ask for here that addresses their time constraints is the request that this Court order the ABA to approve provisionally Barry Law School. This remedy would require the Court to make its own determination of whether Barry meets the ABA Standards, including whether Barry provides an adequate legal education to prepare its graduates for admission to the bar. This Court will not substitute its judgment for that of the ABA.[7] *See Ambrose v. New England Ass'n of Schools & Colleges, Inc.,* 252 F.3d 488, 497–99 (1st Cir.2001) (declining, in a case where disgruntled students alleged that the College was negligently accredited, to determine whether the College was properly accredited); *see also Foundation for Interior Design Educ. Research v. Savannah College of Art & Design,* 244 F.3d 521, 532 (6th

7. This Court's restraint in this regard is especially warranted, since the Plaintiffs' alleged injury—their inability to practice law in the State of Florida—stems directly from the rules of the Florida Supreme Court that an applicant graduate from an *ABA*-accredited law school. The Florida Supreme Court has decided to "rely upon the ABA accreditation process as an objective method of determining the quality of the educational environment of prospective attorneys." *In re Massachusetts School of Law,* 705 So.2d at 899 (internal quotation marks omitted). The Florida Supreme Court recently denied the Massachusetts School of Law's petition requesting the Court to find that its educational program was substantially equivalent to that of ABA-accredited law schools. *Id.* In so doing, the Florida Supreme Court declined to engage in its own review of the school, and stated that it was "confident that the ABA is best equipped to evaluate the quality of education received

at the many law schools throughout the nation." *Id.*

The Florida Supreme Court's decision also relates to the third and fourth prongs of the preliminary injunction standard which consider the balance of hardships and public interest. If the Court ordered the ABA to accredit Barry, such an intervention would result in chaos in law school accreditation. As the Florida Supreme Court, along with other state supreme courts, has noted, any attempt of the courts to evaluate the educational program offered by a particular law school would be "inefficient and chaotic." *Id.* (internal quotation marks omitted). Moreover, while the Florida Supreme Court found that its rules on bar admissions may pose some hardship to graduates from non-ABA accredited law schools, it found that "it continues to be 'in the best interest of the legal profession in our state.'" *Id.*

**1380**

Cir.2001) ("[O]ur review of the Foundation's accreditation decision is limited to alleged procedural violations; it does not extend to the substance of the accreditation decision.").

The Plaintiffs have not demonstrated that they will suffer irreparable injury if the preliminary injunction they seek is not granted. The Plaintiffs have therefore not sustained their burden of demonstrating that a preliminary injunction is appropriate in this case.

Accordingly, it is **ORDERED AND ADJUDGED** that the Plaintiffs' Motion for Preliminary Injunction is **DENIED**.