**DIAMOND CRYSTAL BRANDS, INC., in its capacity as fiduciary of Plan 501 of the Diamond Crystal Brands, Inc. Health Care Plan, Plaintiff,**

v.

**James W. WALLACE, Sr., in his capacity as the Administrator of The Estate of Deborah L. Hayes, Tamara Hayes, individually, and Houck, Ilardi & Regas, L.L.C., as Trustee of the Hayes Settlement Funds, Defendants.**

**Civil Action No. 1:07–CV–3172–JTC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 22, 2008.

John V. Kuruvilla, Kuruvilla Law Firm, P.C., Atlanta, GA, for Plaintiff.

Charles M. Cork, III, Law Office of Charles M. Cork, III, Macon, GA, for Defendants.

## *ORDER*

JACK T. CAMP, District Judge.

Pending before the Court is the Motion for Preliminary Injunction [# 6] filed by Plaintiff Diamond Crystal Brands, Inc. ("Diamond"). Plaintiff brings this action against James W. Wallace, Sr., in his capacity as the Administrator of the Estate of Deborah L. Hayes, Tamara Hayes, and Houck, Ilardi & Regas, L.L.C., as Trustee of the Hayes Settlement Funds, for equitable relief pursuant to Section 502(a)(3) of the Employment Retirement Income Security Act of 1974 ("ERISA"). The Court held a preliminary injunction hearing on January 3, 2008. After considering the argument of counsel and the evidence, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Preliminary Injunction [# 6].

## I. Procedural Background

Plaintiff initiated this action on December 20, 2007, filing a motion for a temporary restraining order the same day. Plaintiff, relying on Section 502(a)(3) of ERISA, sought to prohibit Defendants from disbursing or transferring settlement proceeds in their possession. The Court granted Plaintiff's motion for a temporary restraining order and scheduled a preliminary injunction hearing. (Order, Dec. 20, 2007.) On January 3, 2008, the Court held a hearing and heard evidence on Plaintiff's motion for preliminary injunction. At the hearing, the Court directed both parties to file supplemental briefs and extended the temporary restraining order to give the parties and the Court time to address legal issues raised at the hearing. Both parties have filed supplemental briefs, and the motion is ripe for decision.

## II. Factual Background

The facts in this case are largely undisputed, and the parties stipulated to most of the evidentiary facts.

Plaintiff Diamond is the fiduciary of Diamond Crystal Brands, Inc. Health Care Plan ("Plan 501" or the "Plan"). Plan 501 is a self-funded ERISA plan providing healthcare benefits. The Plan contains a subrogation and reimbursement provision requiring a Plan "Recipient," as defined by the Plan, to reimburse it for medical expenses paid on behalf of a covered individual where the Recipient receives payment from a third party responsible for the medical expenses.

While receiving medical treatment in 2006, Deborah Hayes suffered injuries alleged to result from negligent medical care. These injuries ultimately led to her death. At the time of her death, Deborah Hayes was a covered individual under the Plan, which paid $261,863.58 for her medical expenses incurred as a result of her injuries.

Defendants James W. Wallace, Sr., as the Administrator of the Estate of Deborah Hayes, and Tamara Hayes, the adult daughter of Deborah Hayes, brought a medical malpractice and wrongful death action against Tanner Medical Center, Inc. ("Tanner Medical"). The Malone Law Office, P.C. represented both the Estate and Tamara Hayes in the medical malpractice action. The medical malpractice plaintiffs reached a settlement with Tanner Medical for $900,000.00.

In drafting the settlement agreement, Defendants allocated approximately $63,000.00 to the Estate for recovery of Deborah Hayes's medical expenses. Defendants allocated the remaining $837,000.00 of the settlement proceeds to Tamara Hayes for her claim for the value of the decedent's life. Plaintiff, as fiduciary of Plan 501, initiated this action to recover the $261,863.58 in medical expenses incurred by the Plan from the total settlement proceeds.

On December 27, 2007, Tanner Medical issued the settlement check in the amount of $900,000.00 and mailed it the next day to Defendant Houck, Ilardi & Regas. (Pl.'s Ex. B2 to Mot. for Prelim. Inj. at p. 2–3.) Upon receiving the check, Defendant Houck, Ilardi & Regas returned the check to Tanner Medical and requested that it issue two checks, one to the Estate and one to Tamara Hayes.

## III. Preliminary Injunction Standard

Plaintiff seeks to enjoin Defendants from disbursing, disposing, dissipating, and/or transferring $261,863.58 of set-

tlement funds until the Court decides Plaintiff's claim. In order to obtain a preliminary injunction, Plaintiff must demonstrate that:

(1) it has a substantial likelihood of success on the merits;

(2) irreparable injury will be suffered unless the injunction issues;

(3) the threatened injury to Plaintiff outweighs whatever damage the proposed injunction may cause Defendants; and

(4) if issued, the injunction would not be adverse to the public interest.

*BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC,* 425 F.3d 964, 968 (11th Cir.2005); *Braswell v. Board of Regents,* 369 F.Supp.2d 1362, 1366 (N.D.Ga.2005) (Thrash, J.); *BlueCross BlueShield of S.C. v. Carillo,* 372 F.Supp.2d 628, 638 (N.D.Ga.2005) (Murphy, J.). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 896 F.2d 1283, 1285 (11th Cir.1990). Moreover, the issuance of a preliminary injunction is an extraordinary remedy which a district court should not grant unless the moving party clearly carries the burden of persuasion as to the four elements. *Id.*

## IV. Analysis

Plaintiff contends that it is entitled to equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the amount of $261,-863.58—the amount of money paid by the Plan for the medical bills of Deborah Hayes—because the express terms of the Plan require a plan participant to reimburse the Plan from any recovery from a third party tortfeasor. Defendants do not dispute that the Plan requires the reimbursement of the recovery for medical expenses by the Estate of the decedent in the amount of approximately $63,000.00. Defendants, however, contend that Plaintiff has no claim pursuant to ERISA for the recovery by the decedent's daughter for the value of her mother's life.

Specifically, Defendants contend that: (1) the Court may not enter a preliminary injunction under Rule 65 because Plaintiff has not perfected service on Defendants; (2) Plaintiff's action is premature as the settlement funds are not currently in the possession and control of Defendants; and (3) Plaintiff is only entitled to reimbursement from the Administrator of Deborah Hayes's Estate because the remainder of the settlement funds belong to Tamara Hayes who is not bound by the subrogation and reimbursement provisions of the Plan. Defendants' first two objections can be dealt with easily.

### A. Service of Process

 First, Defendants contend that the Court may not enter a preliminary injunction because Plaintiff did not properly serve Defendants.[1] Rule 65 of the Federal Rules of Civil Procedure, however, only requires that a party have *notice* of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order. Fed. R. Civ. 65(a)(1); *Corrigan Dispatch*

---

**1.** Defendant Houck, Ilardi & Regas contends that Plaintiff served the summons and complaint on a paralegal who is not authorized to accept service of process on behalf of the law firm.

*Co. v. Casa Guzman, S.A.,* 569 F.2d 300, 302 (5th Cir.1978) ("Rule 65 does not require service of process."). Defendants had actual notice of the preliminary injunction hearing and appeared in Court. Accordingly, Plaintiff's motion is properly before the Court for consideration on the merits.

### B. Equitable Relief Pursuant to ERISA

Pursuant to Section 502(a)(3) of ERISA, a fiduciary may bring a civil action to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan...." 29 U.S.C. § 1132(a)(3); *see also Popowski v. Parrott,* 461 F.3d 1367, 1372 (11th Cir.2006). It is undisputed that Diamond is a fiduciary under ERISA and the suit before the Court is one to enforce the provisions of Plan 501. Defendants, however, contend that the relief requested by Plaintiff is not equitable in nature because the settlement funds are not in the possession of Defendants.[2]

■ The Supreme Court has repeatedly explained that Section 1132(a)(3) authorizes only categories of equitable relief that were typically available in equity. *Sereboff v. Mid Atl. Med. Servs., Inc.,* 547 U.S. 356, 126 S.Ct. 1869, 1873, 164 L.Ed.2d 612, (2006); *Great–West Life & Annuity Ins. Co., v. Knudson,* 534 U.S. 204, 210, 122 S.Ct. 708, 712, 151 L.Ed.2d 635 (2002). A claim for restitution under Section

1132(a)(3) is equitable where a plaintiff seeks to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession." *Knudson,* 534 U.S. at 213, 122 S.Ct. at 714; *Sereboff,* 126 S.Ct. at 1874; *see also Amschwand v. Spherion Corp.,* 505 F.3d 342, 346 (5th Cir.2007) ("The crucial distinction between two historical species of restitution is that equitable restitution seeks only to restore to the plaintiff particular funds or property in the defendant's possession, while legal restitution imposed personal liability for breach of a legal duty.").

■ Here, like the ERISA fiduciary in *Sereboff,* Plaintiff seeks to impose a constructive trust or equitable lien on specifically identifiable funds within the possession and control of Defendants. *Compare Sereboff,* 126 S.Ct. at 1874 (plan fiduciary sought to impose constructive trust on settlement funds from tort action that were in the possession of defendants), *with Amschwand,* 505 F.3d at 346 (plan beneficiary brought action for breach of fiduciary duty against plan fiduciary to recover ill-gotten profits); *Admin. Comm. v. Merritt,* No. 5:01cv26, 2003 WL 23213577 (M.D.Ga. May 9, 2003) (Royal, J.) (holding that claim for restitution was not in equity where plan fiduciary filed suit *prior* to the plan participant reaching a settlement with the tortfeasor responsible for her injuries).

The Estate and Tamara Hayes have settled the tort action against Tanner Medical for $900,000.00, allocating approximately $63,000.00 of the settlement proceeds to the Estate in consideration of its claims against Tanner Medical. Prior to the pre-

---

**2.** Importantly, Defendants do not contend that Plaintiff's action would always fail to assert a claim for equitable relief pursuant to Section 1132(a)(3). Rather, Defendants contend that Plaintiff's claim is not equitable in nature *at this time* because the funds are not in their possession and control.

liminary injunction hearing, Tanner Medical issued a settlement check to Defendants, which was received by Defendant Houck, Ilardi & Regal as trustee of the settlement funds while the temporary restraining order was in place. The fact that Defendant Houck, Ilardi & Regas returned the settlement check to Tanner Medical in order to have it issue two separate checks does not render the funds unidentifiable or outside the possession and control of Defendants for purposes of Section 1132(a)(3). Furthermore, the injunction would also be effective against Tanner Medical as "persons who are in active concert or participation" with Defendants. *See* Fed.R.Civ.P. 65(d)(2)(c). Because the settlement funds at issue in this case are specifically identifiable and within the possession and control of Defendants, Plaintiff seeks relief that is equitable in nature within the meaning of Section 1132(a)(3).

### C. ERISA Preemption

Having found that Plaintiff properly asserts a claim for equitable relief pursuant to ERISA, the remaining question for the Court is whether the Plan is entitled to reimbursement from the portion of the settlement apportioned to Tamara Hayes's wrongful death claim, or only the approximately $63,000.00 allocated to the Estate under Georgia's survival statute.

■ Georgia has a survival statute that allows the personal representative of the deceased the right to recover the medical expenses incurred by the deceased as a result of another's negligence. *See* O.C.G.A. § 51–4–5(b). This statute allows for the survival of the decedent's own cause of action. *See generally Gay v. Piggly Wiggly Southern, Inc.*, 183 Ga.App. 175, 358 S.E.2d 468, 473 (1987). In contrast, Georgia's wrongful death statute allows the surviving spouse or child of the decedent to recover the full value of the life of the decedent. *See* O.C.G.A. § 51–4–2(a). "[A]ctions seeking damages for personal injury and for wrongful death are separate and distinct, even though they arise out of the same event." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 463 S.E.2d 5, 8 (1995); *Grant v. Georgia Pacific Corp.*, 239 Ga.App. 748, 521 S.E.2d 868, 870 (1999); *Smith v. Memorial Med. Ctr., Inc.*, 208 Ga.App. 26, 430 S.E.2d 57, 59 (1993). The wrongful death claim in this case belongs to Tamara Hayes and is separate and distinct from the Estate's claim for personal injury. Moreover, because Tamara Hayes, as the non-dependant daughter of Deborah Hayes, is not a "Recipient" as defined by the Plan, she is not bound by the terms of the Plan's reimbursement and subrogation provisions. Thus, Plan 501 is entitled to seek reimbursement from Tamara Hayes only if ERISA preempts Georgia's wrongful death statute.

■ ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" within the scope of ERISA. 29 U.S.C. § 1144(a). A state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983); *Egelhoff v. Egelhoff*, 532 U.S. 141, 147, 121 S.Ct. 1322, 1327, 149 L.Ed.2d 264 (2001); *see also Thomas v. Admin. Comm. of the Wal–Mart Stores, Inc. Assocs. Health and Welfare Plan*, 210 F.Supp.2d 1296, 1299 (M.D.Fla.2002). The Supreme Court has repeatedly observed the expansive nature of this broadly worded provision. *See Egelhoff*, 532 U.S. at 147, 121 S.Ct. at 1327; *New York State Conference*

*of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995); *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). "But at the same time, we have recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run it course.' " *Egelhoff,* 532 U.S. at 146, 121 S.Ct. at 1327 (quoting *Travelers,* 514 U.S. at 655, 115 S.Ct. 1671, 131 L.Ed.2d 695).

The United States Court of Appeals for the Fourth Circuit has discussed when ERISA preempts a state's wrongful death statute. In *Liberty Corp. v. NCNB Nat'l Bank of South Carolina,* 984 F.2d 1383 (4th Cir.1993) (Luttig, J.), the estate of a deceased employee covered by an ERISA group health plan settled a wrongful death claim with a third party tortfeasors for $1.5 million. *Id.* at 1385. The ERISA plan's fiduciary sought reimbursement of its medical expenses out of the settlement proceeds. The North Carolina Wrongful Death Act, however, limited a recovery for medical expenses to $1,500. *Id.* at 1387. On appeal, the plan fiduciary argued that ERISA preempted the North Carolina statute insofar as it interfered with its rights under ERISA to seek reimbursement of medical expenses. The Fourth Circuit disagreed, holding that:

> The Plan only required Bristow to reimburse Liberty for medical benefits paid to him or on his behalf by a third party. Bristow thus subrogated to Liberty only his right to recover from third parties compensation for his medical expenses. The right to recover for wrongful death under [the North Carolina Wrongful Death Act] is not, however, a right that ever belonged to Bristow or to his es-

tate. Rather it belongs to Bristow's beneficiaries, on whose behalf NCNB pursued the claim.

*Id.* at 1387.

A year later, the Fourth Circuit reaffirmed its holding in *Liberty,* explaining that "the answer to the question of whether a claim under North Carolina's wrongful death statute belongs to the deceased plan participant or to a beneficiary of the decedent defines the line between remoteness and relatedness under our *Liberty* decision." *McInnis v. Provident Life & Accident Ins. Co.,* 21 F.3d 586, 589 (4th Cir.1994) (holding that ERISA preempted North Carolina's wrongful death statute where the damage claim belonged to the decedent and her estate); *see also Thomas,* 210 F.Supp.2d at 1300–1301 (holding that ERISA preempted Florida's wrongful death statute where the damage claim belonged to the estate of the deceased).

■ Unlike the claims in *McInnis* and *Thomas,* which belonged to the plan participants and their estates, the wrongful death claim in this case belongs to Tamara Hayes, not the Estate of Deborah Hayes. *See McInnis,* 21 F.3d at 590; *Thomas,* 210 F.Supp.2d at 1300–1301. And like the wrongful death claim in *Liberty,* Plan 501 never had a right to reimbursement under the Plan to any of the settlement proceeds recovered on behalf of Tamara Hayes's wrongful death claim. *Liberty,* 984 F.2d at 1388–89. Accordingly, Georgia's wrongful death statute does not sufficiently "relate to" the Plan within the meaning of ERISA, and the Georgia statute is not preempted by ERISA.

This result, however, does not leave an ERISA plan without recourse where parties apportion a settlement in a manner that limits the plan's right to reimburse-

ment. First, as Defendants' counsel acknowledged, the Plan can intervene in the tort action to protect its interests and ensure that any settlement agreement reached by the parties recognizes its right to reimbursement. Here, the Plan had notice of the tort claims against Tanner Medical and was invited by attorney Adam Malone to intervene or participate in the tort action. (Defs.' Ex. 1 at p. 1). Having declined to intervene in the tort action, Plaintiff may not under the guise of Section 1132(a)(3) now ask this Court to reconstruct the agreement in a manner that maximizes its reimbursement under the Plan.

Second, an ERISA plan could seek to enforce its rights against the administrator of the estate of the decedent. The Plan could have sought an injunction against the Administrator preventing his entering into a settlement which waived a portion of the Plan's lien on the recovery or otherwise violated the terms of the Plan. *See* 29 U.S.C. § 1132(a)(3). Here, the Plan prohibits a Recipient from doing "anything which may have the effect of prejudicing any of the foregoing rights, including but not limited to ... releasing any claim in whole or in part without reasonable compensation therefore." [3] (Pl.'s Ex. A at p. 4.)

Finally, the Plan may have a legal action against the Estate for the funds it lost as a result of the Estate settling its claims against Tanner Medical for significantly less than the medical costs incurred by Deborah Hayes. Plaintiff, however, has not asserted such a claim in this case and could not do so under Section 1132(a)(3). *See Knudson,* 534 U.S. at 213, 122 S.Ct. at

714; *see also Admin. Comm. of the Wal–Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Gamboa,* No. 05–5007, 2007 WL 2021966 (W.D.Ark. July 9, 2007) (dismissing ERISA action brought pursuant to Section 1132(a)(3) where Defendant Gamboa, the person covered under the plan, waived his right to recover from third party tortfeasor in consideration for his wife and two adult children receiving a $1 million settlement for the injuries they sustained in the same accident).

## D. Preliminary Injunction

█ Plaintiff has demonstrated a substantial likelihood of success on the merits of its ERISA claim only as to the portion of the settlement funds allocated to the claims brought by the Estate on behalf of Deborah Hayes and within the possession and control of the Estate. Because the Plan has no right to the settlement funds received by Tamara Hayes, and the funds are outside the possession and control of the Estate, the Plan has not met its burden of demonstrating a substantial likelihood of success on the merits as to its claim for a constructive trust or equitable lien as to the full $261,863.51.

In order for preliminary injunction to issue, however, Plaintiff must also establish that it will suffer an irreparable injury if the injunction does not issue, that the injury outweighs any harm that might result to the Defendants, and that the injunction will not be adverse to the public interests. Each of these three factors favors Plaintiff. If a preliminary injunction does not issue in this case, Plaintiff may not be able to obtain relief under Section 1132(a)(3) because the funds at issue may

---

**3.** The Court takes no position as to whether the settlement agreement in this case would violate this section of the Plan.

no longer be traceable and under the control of Defendants. Additionally, Defendants shall suffer no harm from entry of the injunction, and its entry is not adverse to the public interests. Rather, the public has an interest in insuring the integrity of ERISA plans such as the one involved in this dispute. Accordingly, the Court finds that Plaintiff has met its burden for obtaining a preliminary injunctive as to the portion of the settlement allocated to the claims of the Estate.

## V. Conclusion

The Court **GRANTS in part** and **DENIES in part** Plaintiff's motion for a preliminary injunction [# 6]. The Court **GRANTS** the motion as to the portion of the settlement allocated to the claims of the Estate, approximately $63,000.00 The Court **DENIES** the motion as to the portion of the settlement allocated to the wrongful death claim brought by Tamara Hayes. The Court enjoins Defendants James W. Wallace, Sr., in his capacity as Administrator of the Estate of Deborah Hayes, Tamara Hayes, and/or Houck, Ilardi & Regas, L.L.C., and all those acting in concert or participation with them, from disbursing, disposing, dissipating, and/or transferring the portion of the settlement funds the settlement agreement allocated to the Estate of Deborah Hayes for the injuries sustained by Deborah Hayes as a result of the medical treatment she received on March 13, 2006.

**SO ORDERED.**