PER CURIAM.
The Orange County Bar Association, Thomas B. Drage, and others (hereinafter collectively referred to as the OCBA) have filed a petition seeking to amend the following provisions of the Rules of the Supreme Court Relating to Admissions to the Bar (hereinafter the Bar Admission Rules): former rule 2-11.1, the substance of which is now located in rule 4-13.1, “Educational Qualifications,”[1] and rule 4-13.2, “Definition of Accredited.” We have jurisdiction. See art. V, § 15, Fla. Const.; Fla Bar. Admiss. R. 1-13.
' Rule 4-13.1 provides the educational qualifications that a Bar applicant must possess before being eligible to participate in the Florida Bar examination. Eligibility to submit to any portion of the exam requires that an applicant must “complete the requirements for graduation or receive the degree of Bachelor of Laws or Doctor of Jurisprudence from an accredited law school or within 12 months of accreditation; or ... be found educationally qualified under the alternative method of educational qualification provided in rule 4-13.4.” Rule 4-13.2 defines an accredited law school as “any law school approved or provisionally approved by the American Bar Association at the time of the applicant’s graduation or if graduation is within 12 months of accreditation.”
In its petition, the OCBA has proposed that the former rule 2-11.1 be amended to read:
To be admitted into the General Bar Examination and ultimately recommended for admission to The Florida Bar, an applicant must have received the degree of Bachelor of Laws or Doctor of Jurisprudence from an accredited law school (as defined in 4-13.2) at a time when the law-school-was accredited or within 12 months ¿f accreditation or be found educationally qualified by the Board under the alternative method of educational qualification.
As previously noted, the substance of rule 2-11.1 has been moved to rule 4-13.1; however, the wording of current rule 4-13.1(a) is not identical to that which was contained in former rule 2-11.1. Adapting *296 the OCBA’s proposed amendment to the former rule 2-11.1 so that it would be applicable to current rule 4-13.1 would require the striking of the words “or within 12 months of accreditation” from rule 4-13.1. The OCBA then asserts that rule 4-13.2 should be amended to apply the twelve-month time period only to out-of-state law schools, but to adopt a thirty-six-month time period for in-state law schools. In an alternative request, the OCBA would seek to amend rule 4-13.2 to retain the twelve months from graduation limitation for out-of-state law schools only and add the following definition of “accredited” for in-state law schools:
An “accredited” law school is any instate law school approved or provisionally approved by the American Bar Association, irrespective of when the final decision is rendered, provided that the application for approval was submitted to and the initial site visit conducted by the American Bar Association prior to or within 12 months of the applicant’s graduation.
The OCBA claims that these amendments are warranted because in 1999 the American Bar Association (ABA) began to change its accreditation procedure. This change in process, which the OCBA states was ultimately effectuated on February 16, 2001, and the rationale behind it, have been explained as follows:
The current accreditation decision-making structure is the result of the ABA’s efforts to comply with the U.S. Department of Education’s regulations regarding nationally recognized accrediting agencies. These regulations require that a trade association wanting to be a recognized accrediting agency have a “separate and independent” body that makes accreditation decisions. See United States v. American Bar Ass’n, 135 F.Supp.2d 28, 30 (D.D.C.2001). Based on these regulations, the ABA amended its structure so that the House of Delegates may review the Council’s decisions and remand to the Council for further consideration a maximum of two times, but the House must accept the Council’s decision on the third time. Id. This decision-making structure has been made part of a consent decree entered into between the ABA and the U.S. Department of Justice. See id. at 29-32.
Staver v. American Bar Ass’n, 169 F.Supp.2d 1372, 1375 (M.D.Fla.2001). The OCBA argues that as a result of this procedural change, the accreditation process can consume up to three years following the initial ABA site visit. The OCBA advances the factual argument that even if the ABA Council of the Section of Legal Education and Admissions to the Bar (Council) issues a favorable decision, the time for accreditation can still extend up to three years because the House of Delegates (House) could disagree with the Council’s decision and remand to the Council.
ANALYSIS
As we turn to the merits of the OCBA’s petition, LaBossiere v. Florida Board of Bar Examiners, 279 So.2d 288 (Fla.1973), is instructive as this Court there explained the initial requirement that Bar applicants graduate from an ABA-accredited law school, and why adherence to ABA accreditation should continue:
We were persuaded to follow the American Bar Association standards relating to accreditation of law schools because we sought to provide an objective method of determining the quality of the educational environment of prospective attorneys. This was deemed especially necessary because of the rapid growth in the number of educational institutions awarding law degrees. We wished to be certain that each of these many law *297 schools provided applicants with a quality legal education, but we were unequipped to make such a determination ourselves because of financial limitations and the press of judicial business.
The same arguments which persuaded us in 1955 to follow American Bar Association criteria relating to accreditation of law schools remain persuasive in 1973. Institutions providing a legal education are more numerous and growing more rapidly today than at any time in the past. We applaud this growth. At the same time we share the view of educators that growth in numbers and size must not be allowed to detract from the quality of a student’s education. Accordingly, we continue to require that applicants for admission to the Florida Bar examination be graduates of accredited law schools.
Id. at 289-90. This analysis is timeless.
The OCBA argues that this Court should change the Bar Admission Rules to conform with recent changes in the ABA accreditation process because they allegedly elongate the time frame for the ABA to reach a final resolution on accreditation. We conclude that amending the Florida Bar Admission Rules in accord with either of the proposals suggested by the OCBA is neither necessary nor desirable. The reasons for our determination are both simple and clear.
A Thirty-Six Month Accreditation Time Period for Florida Law Schools
Documents have been filed which address the factual assertion in the OCBA’s petition that the ABA’s accreditation process has been “lengthened from one year to almost three years.” Our view of the applicable material leads us to conclude that the OCBA’s statement and position with regard to the extended three years from the time of application for a law school to obtain provisional approval is misdirected. The extended time frame may only occur in the highly unusual case in which the House would twice refer back to the Council for reconsideration a decision of the Council to grant or deny provisional approval, and then only if on the final remand the Council would grant provisional approval. The role of the House in this process was changed in 1999 from that of actually granting provisional or full approval to that of concurring in or remanding a decision of the Council, and since that time the House has never failed to concur in a Council decision concerning provisional or full approval. It appears that in all but two instances since the fall of 1996, provisional approval has been granted within ten months of the application upon which such provisional approval has been based. Thus, although it is possible that the process could extend up to three years for a school to obtain provisional accreditation, such a length of time is the exception rather than the norm. We do not believe that we should amend our rules to be predicated on an exception and a “worst case scenario” as our accreditation time line.
Increasing the time period for accreditation from twelve months after graduation to thirty-six months could lead to very questionable results. For example, a new Florida law school could open in 2006. During the first three years of the school’s existence, the school could not be recommended for provisional accreditation simply because the school has failed to comply with numerous ABA accreditation standards. In short, the legal education at that school would be considered to be extremely poor. Over the next three-year period, substantial improvements could be made. If provisional accreditation were finally granted in 2012, the class of 2009 (i.e., the first graduating class of the law school), despite the extremely poor quality *298 of their legal education, would be eligible for the Florida bar examination based upon the fact that a full three years after their graduation, the law school would be deemed to be in substantial compliance with the NBA standards. We conclude that it would be ill-advised to amend rule 4-13.2 to change the accreditation time frame for in-state law schools from twelve to thirty-six months from graduation because we conclude that such a structure would not adequately ensure Florida citizens that Florida law school graduates sitting for the bar exam had received a legal education which satisfied appropriate ABA standards of quality.
A second reason to maintain our current standards and reject the OCBA’s thirty-six-month proposal is related to the current practices of a majority of states with regard to this issue. We have reviewed the requirements of forty-four jurisdictions that are members of the Council of Bar Admission Administrators with regard to (1) whether the jurisdiction requires graduation from an accredited law school; (2) if so, whether graduation must occur at a time when the law school is accredited; (3) if not, within what time period must accreditation occur in relationship to graduation; and (4) whether the jurisdiction’s board accepts petitions for waiver of the law school’s graduation requirements. This review is most enlightening. We have determined that our current rule which contains the requirement that one graduate within twelve months of provisional accreditation is already more generous than the rule in the vast majority of the jurisdictions. A majority, thirty-six, of these jurisdictions specifically require that their bar applicants must be graduates of a law school that has been accredited by the ABA at the time of graduation. If Florida’s twelve-month provision were to be extended to thirty-six months as the OCBA urges, Florida would then reposition itself as having one of the least demanding rules on this issue (the same as Nevada’s rule). The need for Florida to so extremely lower its existing reasonable standard has not been demonstrated. Our current view of accreditation is more lenient and flexible than most other jurisdictions. We could even theoretically structure Florida’s accreditation standards to be even more restrictive, and our reliance on the ABA’s accreditation process would still be valid. Given our view that a three-year accreditation process is the exception rather than the norm, and the fact that a majority, thirty-six, of the forty-four jurisdictions that we have reviewed require accreditation at the time of graduation, we conclude that it would not only be ill-advised, but it would be deleterious to this state’s legal profession to further relax Florida’s accreditation process standard to one of the most minimal in the nation.
Calculating the Twelve-Month Deadline from Site Visit Upon Which ABA Approval is Based
The OCBA also alternately argues that in calculating the twelve-month period for ABA provisional accreditation, the date of the site visit which results in provisional accreditation should be the date considered with regard to graduation. However, our decision in Florida Board of Bar Examiners re Barry University School of Law, 821 So.2d 1050 (Fla.2002), militates against amending the rule in this manner. In Barry University, the ABA Accreditation Committee recommended that Barry University receive provisional accreditation after a November 2000 site visit; however, in February 2001, the Council initially acted unfavorably on the committee’s report. See 821 So.2d at 1052. The Court refused to waive the twelve-month requirement for those students who graduated within one year of the November 2000 visit even though that visit may have had some *299 relationship to the provisional accreditation which occurred in February 2002. In so holding, this Court stated:
Barry University would have this Court go behind the ABA’s multi-tiered process of decision-making and reach a determination that the ABA erred by not granting provisional accreditation in February 2001....
[[Image here]]
... Barry University would have this Court overlook the Council’s actions in this case in assessing when Barry University came into substantial compliance with the ABA’s standards. This we decline to do.
Id. at 1055-56. If we were to adopt the OCBA’s alternate proposed amendment, students would be allowed to participate in the Florida bar examination even if the ABA Council acted unfavorably on a site committee’s report (but ultimately recommended provisional accreditation) so long as that site visit occurred within twelve months of the students’ graduation. We conclude that amending the rule in this manner would be contrary to our statement in Barry University that we will not second-guess the ABA’s decision-making process, nor overlook the Council’s actions in determining when a law school is in substantial compliance with the ABA’s standards.
In arguing that Florida’s Bar Admission Rules should be amended so that the accreditation deadline is calculated from the site visit upon which ABA approval is eventually granted, the OCBA is essentially seeking a waiver of the requirement that Florida’s law schools proceed through the ABA’s multi-tiered accreditation process. In Florida Board of Bar Examiners re Hale, 433 So.2d 969, 973 (Fla.1983), the Court declined to grant further waivers of the requirement that applicants graduate from an ABA-accredited law school. The Court reasoned:
[W]e have neither the time nor the expertise to investigate individually the special training of an applicant or the program offered by specific law schools, and any attempt by us to do so would be inefficient and chaotic. The ABA system of accreditation is sophisticated and time-consuming. We can think of no effective substitute which could be developed at the state level without diverting impractical amounts of manpower and money into such an inquiry.
Id. at 972 (citation omitted) (quoting In re Hansen, 275 N.W.2d 790, 796 (Minn.1978) and In re Urie, 617 P.2d 505, 508 (Alaska 1980)). In subsequent cases, we have consistently refused to authorize waivers of the accreditation requirements and strictly adhered to our decision to rely upon the ABA’s accreditation process. In Florida Board of Bar Examiners re Massachusetts School of Law, 705 So.2d 898, 898-99 (Fla.1998), we declined to grant a waiver of the requirement that an applicant for admission to The Florida Bar must have graduated from a law school approved or provisionally approved by the ABA. In Massachusetts School of Law, we elaborated upon the importance of the ABA in evaluating the quality of education offered by a law school:
The process employed by the ABA is extensive and involves numerous detailed standards for law school organization and administration, the educational programs offered, the faculty, admissions, the library, and the actual physical facilities occupied by the school. Using these standards, law schools are inspected and, importantly, reinspected on an ongoing basis. Additionally, as a national organization, the ABA provides the benefit of a uniform process and uniform standards in accrediting law *300 schools regardless of their geographical location. For these reasons, we reaffirm our policy, as stated in Hale, against granting waivers of the ABA accreditation requirement.
Id. at 899. In Barry University, we subsequently reaffirmed, and today we again reaffirm, our decision that excellence in our profession directs that the ABA’s accreditation process is the preferable manner to ensure that law school graduates who wish be candidates for the Florida bar examination have received a high-quality legal education.
In light of the foregoing, while we recognize that the twelve-month rule has created and may continue to create some difficulties for some graduates, a circumstance for which we have great compassion, we conclude that it is in the best interest of Florida’s legal profession to maintain this standard for accreditation. Although our personal concerns and our concern for each individual adversely impacted are great, we have an obligation and a responsibility to not only a select few, but a larger obligation to all of the citizens of this great state to maintain the highest of reasonable standards for the profession we have been privileged to serve. Accordingly, we deny the OCBA’s petition to amend the Rules of the Supreme Court Relating to Admissions to the Bar.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs in result only.

. Since the filing of the OCBA's petition, this Court has amended the Bar Admission Rules. See Amendments to Rules of Supreme Court Relating to Admissions to the Bar, 843 So.2d 245 (Fla.2003).